[Central of Georgia Railway Co. v. Stevenson.]

# Central of Georgia Railway Co. v. Steverson.

## Damages for Maintaining Nuisance.

(Decided Nov. 16, 1911.   Rehearing denied Jan. 30, 1912.
57 South. 494.)

1. *Nuisance; Damages; Willfulness.*—Under the facts in this case which are stated and examined, it is held that the burying of the calf and the subsequent action relative thereto did not constitute any willful or wanton misconduct.

2. *Same.*—Where the nuisance created by a disinterred calf on defendant's right of way within one hundred and twenty feet of plaintiff's residence, which the defendant allowed to remain there three days after notice, but which the plaintiff could have abated at the expense of one dollar, a verdict of $250 for creating the nuisance was excessive.

3. *Damages; Duty to Minimize.*—Although the plaintiff owed defendant no duty to abate the nuisance created by it, he did owe the defendant the duty to minimize the damages if he knew that from continued neglect of defendant's servants, to abate it, he was likely to receive, or was actually receiving annoyance and inconvenience.

4. *Statutes; Reduction of Damages; Due Process.*—Acts 1911, p. 587, offends no provision of the Constitution, touching the right of trial by jury.

APPEAL from Clay Circuit Court.

Heard before Hon. JOHN PELHAM.

Action by J. M. Steverson against the Central of Georgia Railway Company for creating and maintaining a nuisance.   Judgment for plaintiff, and defendant appeals.   Affirmed on condition that damages are remitted.

LACKEY & BRIDGES, and GEORGE P. HARRISON, for appellant.   In an action for damages, a party cannot recover for damages that he might have avoided by due diligence.—*L. & N. v. Sullivan*, 138 Ala. 379; *Mitchell v. Sloss-S. S. & I. Co.*, 49 South. 851; *Lilly v. Fletcher*, 81 Ala. 234; 12 South. 447; 22 Am. St. Rep. 441.   No

[Central of Georgia Railway Co. v. Stevenson.]

wanton or wilful misconduct is shown and punitive damages should not be awarded.—*Garrett v. Sorrell,* 108 Ala. 521; *S. & N. R. R. Co. v. McLendon,* 63 Ala. 266. The court will set aside a verdict which is excessive.—*Teague v. Bass,* 131 Ala. 422; 13 Cyc. 123. The killing of the calf was not of itself a nuisance.—*Kenney's case,* 116 Ala. 310.

Riddle, Ellis, Riddle & Pruet, for appellee. The jury were at liberty to assess punitive damages.—*S. & N. Ala. R. R. Co. v. McLendon,* 63 Ala. 566. The person who undertakes to abate a nuisance does so at his own peril.—12 Am. St. Rep. 891. Counsel insist on application for rehearing that the act allowing the Appellate Court to abate the judgment or reverse the cause (Acts 1911, p. 587) is violative of sections 11 and 13 of the Constitution of Alabama, and of articles 1 and 14 of the Constitution of the United States.

De GRAFFENRIED, J.—The appellee brought a suit against the appellant for $5,000 damages for creating and maintaining a nuisance near his premises, which caused annoyance and inconvenience to him and his family in his home. There were two counts to the complaint. The first count charged that the nuisance was created through the negligence of the appellant, its agents or servants. The second count charged that the nuisance and the damages therefrom resulting were due to the wanton, willful, or malicious misconduct of appellant, its agents or servants.

The facts are that the appellant owns and operates a railroad; that appellee' home is situated about 120 feet, in the town of Hollins, from appellant's right of way; that on or about the 2d of June a train of the appellant struck a calf, and badly crippled it,

on its right of way immediately in front of appellee's home. Shortly afterwards the section foreman of appellant found the calf in this condition and killed it and had it buried on the right of way of the appellant at the place where it was killed. There was dispute in the testimony as to the depth of the grave in which the calf was buried and as to the amount of dirt that was placed over the calf at the time it was buried.

There was nothing in the burial of the calf, however, from which willful or wanton misconduct could be inferred. The worst that could reasonably be deduced from the place and manner of the burial was that appellant, its agents or servants, were negligent in the selection of the place or in the manner of the burial of the calf. The fact that the calf was *buried* negatives any idea that it was the purpose of appellant, its agents or servants, to cause injury to appellee.

About a week after the calf was buried, a dog made a hole in the grave and exposed a part of the carcass. The grave being thus broken into, unpleasant odors arose therefrom and, as some of the testimony tends to show, not only caused inconvenience *on that account* to appellee and his family in the enjoyment of their home, but also attracted buzzards and green flies, which added to appellee's annoyance.

As appellee resided within 120 feet of the grave, he was, naturally, the first person, or one of the first, to discover this condition, and he seems to have discovered it on Thursday about a week after the burial of the calf. On that night he saw the town marshal and also the depot agent. Appellant's office was closed, and the agent was on his way home. The agent told him that he would have the cause of the trouble removed. Nothing was done by appellant on the next day, and on Friday

evening appellee again saw the agent, and the agent told him that he had forgotten the matter, but would have it attended to. Appellee then told the agent that he would give him until the next day within which to do so. Nothing was done on the following day, but on Sunday the section foreman was notified of the situation and, taking the testimony most strongly in favor of the appellee, the section foreman, when first informed of it, said that he "had buried it once, and that he was not going to have anything to do with it unless he received orders to do so," but, later in the day, stated that he would attend to it, and, on the next day, the damage to the grave was properly repaired and the nuisance abated.

We are unable, as we have already said, from the facts to find any evidence upon which a jury could lawfully deduce willful misconduct on the part of appellant, its agents or servants. It is true that the evidence tends to show that appellant's train and employees, including the members of its section gang, constantly passed and repassed the grave during the period covered by this litigation, and that they were neglectful of their duty to keep the right of way in proper condition; but there is nothing indicating that any act or omission of theirs was willfully or wantonly done. It is true that the section foreman manifested some impatience when informed, on Sunday, of the condition of the grave; but it is also true that during that same day he stated that he would have the damage repaired, and on the next day it was repaired.

"Where there is no malice connected with the wrong complained of, or such gross negligence or oppression or fraud as amounts to malice, the compensation or amount of damages should be confined to the actual injury and its immediate effect."—*Wilkinson v. Searcy,* 76 Ala. 176.

[Central of Georgia Railway Co. v. Stevenson.]

The court in its oral charge to the jury charged the jury as follows: "A man cannot sit idly by and suffer an injury which, by the exercise of ordinary care and reasonable diligence, he can prevent, and speculate on the damages he may be able to recover."

In the present case, appellee's annoyance was, taking the facts in the case in their most unfavorable light against appellant, caused by the negligent manner in which a calf was buried in front of his house. A modicum of good temper and a small amount of labor on the part of appellee would have prevented all annoyance to appellee, and, under the law, it was the duty of appellee to have retained his temper and expended the labor necessary to have prevented the annoyance. It is evident that by the expenditure of less than a dollar the appellee, who was not a helpless woman, but a *man*, could have abated this nuisance, and thus saved himself the annoyance to which he was thereby subjected. He stated in his testimony that one reason why he did not cover up the calf was, "that he did not want the job." This may be true; but the law, nevertheless, required that he should, as the court properly charged the jury in this case, have exercised ordinary diligence and care in preventing the injury to himself and family. On this subject, the law is but the application of that golden rule of conduct which requires that we shall so do unto others as we would have them, in like circumstances, do unto us. The appellee knew that by the neglect of the servants of appellant he was likely to receive, or was actually receiving, annoyance and inconvenience, and it was his duty to appellant to have minimized the damage caused by the nuisance if, by the exercise of ordinary care, he could have done so, and thus saved appellant the damage resulting therefrom.

[Central of Georgia Railway Co. v. Stevenson.]

The rulings of the court in the trial of the cause on the pleadings and on the evidence were in accordance with law, and in its charge to the jury it correctly stated the law as applied to the facts of the case.

In awarding the $250 to appellee as his damages in the case, the jury, taking into consideration the situation of the parties, their duties to each other under the law, and the fact that appellee, by the exercise of ordinary care, could have prevented most, if not all, of the annoyance which he suffered by reason of the negligence of appellant's servants, allowed appellee a sum largely in excess of the amount to which he was justly entitled.

Taking into consideration the circumstances surrounding the parties and the fact that the nuisance could have been abated by the expenditure by appellee of a small amount of money, we are of opinion that, in this case, the sum of $50 is amply sufficient to cover any damages which appellee is, under the facts in this case, entitled to recover of appellant and, unless the appellee shall, within 30 days from this date, remit $200 of the damages allowed to him by the jury, this cause will be reversed and remanded.

PELHAM, J., not sitting.

On Application for Rehearing.

DE GRAFFENRIED, J.—The act of the Legislature entitled an act to regulate proceedings in the Supreme Court or Court of Appeals in cases which, in the opinion of the court, should be reversed because the judgment of the lower court is excessive and there is, in the opinion of the Supreme Court or Court of Appeals, no other ground of reversal, approved April 21, 1911 (Laws 1911, p. 587), is, upon this application for a rehearing, attacked upon the ground that it is uncon-

[Central of Georgia Railway Co. v. Stevenson.]

stitutional. We therefore deem it proper to add to the opinion already on file in this case this supplemental opinion.

The act above referred to simply authorizes the Supreme Court and Court of Appeals to notify the appellee, in a case where the court is of the opinion that the judgment of the court below is excessive and that it should be reversed on that account, the amount which it deems in excess of the just and proper amount of recovery, and to require the appellee, within a stated time, to remit such amount upon the penalty of a reversal. If the appellee accepts the reduction, then, if the appellant consents thereto, the judgment of the court below is affirmed. If the appellee refuses to accept the reduction, or if he accepts the reduction and the appellant refuses to consent thereto, the judgment is reversed.

There is nothing in the state or federal Constitution affecting the common-law right of a trial court to set aside the verdict of a jury when it is excessive. In fact, the power of the trial judge to set aside the verdict of a jury when not justified by the evidence has been so long recognized as essential to the proper administration of justice that it, in truth, forms an essential part of the right of trial by jury itself. To use the language of the Supreme Court of the United States: "Under these statutes, as at common law, the court, upon the hearing of a motion for a new trial, may, in the exercise of its judicial discretion, either absolutely deny the motion or grant a new trial generally, or that it may order that a new trial be had unless the plaintiff elects to remit a certain part of the verdict, and that, if he does so remit, judgment be entered for the rest."— *Kennon v. Gilmer*, 131 U. S. 23, 30, 9 Sup. St. 696, 33 L. Ed. 110.

"It is a right incidental to all courts invested with the jurisdiction to hear and determine causes, to grant new trials so as to promote justice. An order for this purpose may be either absolute or unqualified, or may be conditional, and impose upon the party asking it the performance of some act, or to prevent a new trial it may require the party against whom the motion is made to renounce, at his election, some advantage he has gained."—Collier, C. J., in *Stephenson v. Mansony*, 4 Ala. 317.

The power of a trial court to set aside, upon a proper motion for a new trial, the verdict of a jury because the verdict was excessive, is undoubted. From the judgment of the trial court upon such motion an appeal undoubtedly lies to the Supreme Court or to the Court of Appeals. The power to review such judgment is undoubtedly vested in these courts, and when the bill of exceptions shows that the judgment of the lower court was wrong, and that it should have granted the appellant a new trial because of the excessive verdict of the jury, the Supreme Court or the Court of Appeals not only has the power, but it is the duty of such court, to reverse the judgment of the lower court. The statute under consideration simply provides that, in such a case, the Supreme Court and Court of Appeals, with the consent of both the appellant and the appellee, may reduce the judgment to an amount which the members of the court may deem right and just under all the facts and circumstances of the case. If the appellant and the appellee do not consent to the reduction, the judgment of the trial court is reversed and the cause remanded for a new trial. If they do consent to the reduction, the judgment as reduced is affirmed.

The above, in plain English, is all that the act under consideration does or undertakes to do, and it in no

[Central of Georgia Railway Co. v. Stevenson.]

way offends any constitutional provision touching the right of trial by jury.—*Kennon v. Gilmer*, 131 U. S. 23, 30, 9 Sup. Ct. 696, 33 L. Ed. 110.

2.   Undoubtedly there was no duty resting upon the appellee to abate the nuisance complained of, and, properly considered, there is nothing in our opinion on file in this case indicating a contrary view.   But, as was said by us in the opinion on file, although there is no law requiring a party suffering from the effects of a nuisance to abate it, yet he will not be heard to complain if, with ordinary care and diligence, he could have avoided the injury.   "A party is not to cast himself upon an obstruction which has been made by the fault of another and avail himself of it, if he do not himself use common and ordinary caution to be in the right."— Stone, C. J., in *Crommelin v. Coxe,* 30 Ala. 318, 68 Am. Dec. 120.   "Because a water power was obstructed, it does not follow that a mill run thereby should be allowed to stand idle or do only a fourth of its ordinary work.   *   *   *   Where a person sustains an injury from a wrongdoer, it is the duty of the person to make a reasonable effort to limit the effects of the injury. And this is so even though it may be necessary for the injured person to expend money for such purpose."— *Decorah Woolen Mill Co. v. Greer,* 49 Iowa, 491; *Walrath v. Redfield,* 11 Barb. (N. Y.) 368.

It has been held that the burial of a dead animal near another's dwelling is a specific nuisance.—*Louisville, etc., R. Co. v. Bolton,* (Ky.) 38 S. W. 498; *Jarvis v. St. Louis, etc., R. Co.,* 26 Mo. App. 253.

The appellee owed no duty to appellant to abate the nuisance complained of in his complaint by disinterring and removing the carcass of the calf, but he did owe it the duty of minimizing his injury.

Application for rehearing overruled.