SCHIRO and another, Respondents, vs. ORIENTAL REALTY COMPANY, Appellant.*

*March 8—April 3, 1956.*

* Motion for rehearing denied, with $25 costs, on June 5, 1956.

538

For the appellant there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Norman C. Skogstad* and *Reuben W. Peterson, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Skogstad* and *Mr. Peterson.*

For the respondents there was a brief and oral argument by *W. G. Cavanaugh, Jr.,* attorney, and *Arlo McKinnon* of counsel, both of Milwaukee.

CURRIE, J. The first issue raised by the defendant on this appeal is whether there is any credible evidence to sustain the jury's finding that Mrs. Schiro was on her own property at the time she lost her balance and fell. It is defendant's contention that Mrs. Schiro was walking at the time upon land owned by defendant. If this contention were found to be correct, then defendant would be entitled to judgment dismissing the complaint. This is because no duty exists on the part of a landowner toward a trespasser except to refrain from wilfully or wantonly injuring him. *Nalepinski v. Durner* (1951), 259 Wis. 583, 49 N. W. (2d) 601.

The amended complaint of the plaintiffs alleged that the retaining wall was *"located on the west boundary of the defendant's property."* Defendant's answer contained no denial

of this allegation. Neither did the answer set forth any defense that Mrs. Schiro was a trespasser at the time she lost her balance and fell. Therefore, on this state of the pleadings the allegation of the amended complaint, as to the wall forming the west boundary of defendant's premises, stood admitted.

The testimony on the part of the plaintiffs bearing on such issue was as follows: The four clothes poles were erected by the plaintiffs on the narrow strip between the boardwalk and the wall in 1928 and from that time to the date of the accident Mrs. Schiro regularly hung her washing on the clotheslines strung from the crossarms of such clothes poles and in doing so made use of such strip of land. Mr. Schiro during such period kept the grass on such strip mowed every week or ten days during the growing season. In so doing he thought that the east line of plaintiffs' property was the west face of the retaining wall.

As its last witness, the defendant called one Connell, a surveyor, who testified to having surveyed the east lot line of plaintiffs' premises. He did not directly testify that he established such line on the basis of the description contained in plaintiffs' deed, but we assume for the purpose of this opinion that is what he did. Such survey placed this lot line very close to the east edge of the boardwalk so that very nearly all of the strip of lawn, on which the plaintiffs' clothes poles were set and on which Mrs. Schiro was walking sideways at the time she lost her balance and fell, lay to the east of such line. Even after the offering of such testimony, defendant made no motion to amend its answer to conform to the proof. So long as defendant did not move for such amendment there was no reason for plaintiffs to move to amend their complaint to allege title to the strip between the walk and wall based upon adverse possession.

There was no testimony that the defendant, or anyone other than the plaintiffs, made any use of the strip in question

during the period from 1928 to the date of the accident. Thus, so far as appears from the record, the plaintiffs' use of such strip during that period was continuous and exclusive. The fact, that such acts of possession by the plaintiffs may have occurred as a result of a mistaken belief that the west surface of defendant's retaining wall constituted the true boundary line, did not prevent such acts of continuous exclusive possession extending for more than twenty years from ripening into a good title by adverse possession. *Ovig v. Morrison* (1910), 142 Wis. 243, 125 N. W. 449, and note in 4 Wisconsin Law Review, 41.

The trial court gave no instructions in its charge to the jury with respect to the first question of the special verdict on the effect of twenty years' continuous, exclusive, adverse possession of the strip in question by the plaintiffs, and none was requested. Neither did the charge make any mention of the survey made by Connell, although the jury had before it exhibits showing his location of plaintiffs' east boundary line. There was overwhelming evidence to support a jury finding that at the time of the accident the plaintiffs had title to this strip based upon adverse possession for more than twenty years. We can perceive no reason why this court should disturb the jury's answer of "Yes" to the first question of the special verdict merely because no instruction on adverse possession was given or requested.

The second issue raised by the defendant on this appeal is that the slope of the strip of lawn, on which Mrs. Schiro placed her foot and lost her balance as a result, was as a matter of law too insignificant a defect to be actionable. The strip of lawn at such point was 19½ inches wide and the slope thereof from west to east was three inches. We consider that such a condition presents a jury issue as to whether it caused Mrs. Schiro's fall, and that this court should refuse to relieve defendant from liability on the ground that such a slope is too slight to be actionable.

The third and last point advanced by defendant is that, even assuming that defendant's failure to properly maintain its wall constituted a nuisance which interfered with the plaintiffs' use and enjoyment of their premises, nevertheless, plaintiffs are barred from recovery by application of the doctrine of assumption of risk.

The sixth question of the special verdict, "Did the plaintiff, Katherine Schiro, acquiesce in the dangerous condition of the defendant's retaining wall," was framed so as to submit the issue of assumption of risk. Upon motions after verdict the learned trial judge, in his memorandum decision, voiced the opinion that the evidence did not sustain the jury's answer of "No" to such question. However, the trial court did not change such answer because of the conclusion reached that such question should not have been included in the verdict. The reason advanced for such latter conclusion was that assumption of risk is never a defense to an action grounded upon nuisance.

Apparently this court has never directly passed upon the question of whether either contributory negligence or assumption of risk may be a defense in an action for damages alleged to have been sustained as a result of a nuisance. In approaching a proper solution of this problem we deem it to be desirable to briefly analyze what is meant in legal parlance by "nuisance." It would be difficult to find a term which has been the subject of more mystifying confusion of utterance in the reports and texts. We have no desire to compound the confusion, but only to seek a simple and accurate definition. With such a standard as our objective, we commend the following statement by Professor Warren A. Seavey in his article entitled "Nuisance: Contributory Negligence and Other Mysteries," 65 Harvard Law Review, 984:

"Nuisance has been treated as if the term were so amorphous and protean as to make impossible a description of the area which it covers. However, as in the case of other words

which have been used by the courts in various senses, it is worthwhile to attempt a terse description of the conduct and the results which are included in the judicial use of nuisance. As commonly used, it connotes a condition or activity which unduly interferes with the use of land or of a public place. Conduct which interferes solely with the use of a relatively small area of private land is tortious but not criminal and is called a private nuisance. Conduct which interferes with the use of a public place or with the activities of an entire community is called a public nuisance. This is criminal, and is also tortious to those persons who are specially harmed by it."

As this court recently pointed out in *Walley v. Patake* (1956), 271 Wis. 530, 541, 74 N. W. (2d) 130, a nuisance may be based upon either negligent or intentional conduct. See also Prosser, Law of Torts (2d ed.), p. 389, sec. 70; and Restatement, 4 Torts, ch. 40, p. 220. It would seem to follow as a matter of logic that, where the conduct causing the nuisance is negligent and not intentional, the defendant should be accorded the same defenses that would be available in any other action grounded upon negligence. This was the conclusion reached by the New York court of appeals in a notable opinion rendered by Chief Judge CARDOZO in the case of *McFarlane v. Niagara Falls* (1928), 247 N. Y. 340, 160 N. E. 391. In that case plaintiff stumbled over a fanlike projection in a public sidewalk and fell, and suit was brought against the defendant city on the ground that such sidewalk defect was the result of negligent construction by the city and constituted a nuisance. The question before the court on appeal was whether contributory negligence was a defense to the action and the court held that it was. The rationale of the opinion is convincingly set forth in the following quotation therefrom (p. 344):

"Not a little confusion runs through the reports as to the effect of contributory negligence upon liability for nuisance. Statements appropriate enough in their application to nui-

sances of one class have been thoughtlessly transferred to nuisances of another. There has been forgetfulness at times that the forms of actions have been abolished, and that liability is dependent upon the facts and not upon the name. Confining ourselves now to the necessities of the case before us, we hold that whenever a nuisance has its origin in negligence, one may not avert the consequences of his own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance [citing cases]. Very often the sufferer is at liberty to give to his complaint either one label or the other. It would be intolerable if the choice of a name were to condition liability."

For further cases holding that contributory negligence is a defense in an action for damages occasioned by a nuisance grounded upon negligence, see Prosser, Law of Torts (2d ed.), p. 424, sec. 74, footnotes 60–64, inclusive. Because we are convinced of the soundness of such rule, we adopt the same.

Having reached this conclusion, we are now faced with the problem of determining whether the alleged conduct of Mrs. Schiro, in attempting to walk on the sharply sloping strip of lawn near the break in the retaining wall, having known for a long time of the existence of such dangerous condition, constituted assumption of the risk by her or contributory negligence. In most jurisdictions it is unnecessary to sharply distinguish between assumption of risk and contributory negligence because both are a bar to recovery by an injured plaintiff. However, because of Wisconsin's comparative-negligence statute (sec. 331.045), an injured plaintiff in this state, guilty of contributory negligence, is permitted to recover a proportion of his damages if his negligence is less than 50 per cent of the total aggregate negligence of both plaintiff and the defendant; but, if such plaintiff is found to have assumed the risk causing his injury, such assumption of risk bars any recovery.

It has been customary for the courts of this state in cases wherein the plaintiff seeks to recover damages for a fall to submit in the special verdict a question inquiring as to whether the plaintiff failed to exercise ordinary care for his own safety and not to submit any question as to assumption of risk. Two recent examples of this are to be found in the cases of *Bush v. Mahlkuch* (1956), ante, p. 246, 75 N. W. (2d) 283, and *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 74 N. W. (2d) 137. Wisconsin has limited the application of the defense of assumption of risk to situations where there is a consensual relationship between the defendant and plaintiff such as host and guest, or master and servant. *Switzer v. Weiner* (1939), 230 Wis. 599, 603, 284 N. W. 509, and *Frei v. Frei* (1953), 263 Wis. 430, 434, 57 N. W. (2d) 731. By sec. 331.37, Stats., the defense of assumption of risk has now been abolished in master-and-servant cases except as to farm labor. There was a complete absence of any consensual relationship existing between the plaintiff and the defendant in the instant case.

Prof. Seavey in his article in 65 Harvard Law Review, 984, 994, 995, points out another reason why assumption of risk should not be a defense in the present action. The illustration there given is that of a plaintiff who, in making use of a public highway, is injured by a defect therein. Such a person "does not 'assume the risk' since he is not free; the risk is being forced upon him by the defendant's unlawful conduct." In the instant case Mrs. Schiro had the right as owner to use the strip of land between the sidewalk and the wall for hanging up clothes, and any risk she incurred in so doing was forced upon her by defendant's negligent conduct in failing to properly maintain the wall. A party is not required to surrender a valuable use of his property merely because of defendant's wrongful conduct. Prosser, Law of Torts (2d ed.), p. 425, sec. 74.

The trial court in the case at bar should have submitted a question in the special verdict inquiring as to Mrs. Schiro's contributory negligence, and the question of acquiescence or assumption of risk should have been omitted.

There is a further principle of law applicable to actions grounded upon nuisance wherein a plaintiff seeks to recover damages resulting from injury to his land, or interference with the enjoyment and use thereof, caused by the wrongful conduct of the defendant. This principle is that, if the plaintiff by a reasonable expenditure on his part could have remedied the condition or protected his property, or the enjoyable use thereof, from further damage or interference, and he fails so to do, he cannot hold the defendant liable for the subsequent occurring damage. Such failure by a plaintiff to minimize his damages is a defense in cases of nuisance resulting from intentional as well as negligent acts of a defendant. Prosser, Law of Torts, (2d ed.), p. 424, sec. 74.

In *Atchison, T. & S. F. R. Co. v. Jones* (1903), 110 Ill. App. 626, plaintiff sought damages from the defendant railroad company for injury to certain farmlands as a result of acts performed by the defendant on its adjoining property. The defendant was charged with obstructing the channel of a natural stream that had previously drained plaintiff's lands, and of diverting the waters of such a stream into an artificial channel so that the waters from the latter percolated into plaintiff's lands preventing the growing of crops thereon. At the trial the defendant offered to prove that it was practicable for the plaintiff at a reasonable expense to have tile-drained his lands thereby preventing further damage. The appellate court held that it was error to have excluded such evidence and in its opinion stated (p. 645):

"Undoubtedly the law is, and it is so conceded by counsel for plaintiff, that where the suit is for a permanent injury to land it is proper to take into consideration whether the injury could be obviated, in whole or in part, by a reasonable

·expenditure, in removing the obstruction. It is insisted, however, that this rule does not apply where it is sought to recover damages to crops, or use and occupation resulting from a continuing nuisance. We are unable to see any reason for this distinction and to our minds the authorities do not sustain the contention. We believe the law to be that if the plaintiff could by a reasonable expenditure under the circumstances, in the exercise of reasonable diligence, by work on his own land, have lessened the damages or obviated them in whole or in part, it was his duty to have done so. In such case the measure of damages would be the loss sustained before he could in the exercise of reasonable diligence have abated the nuisance, together with all cost and expense of abating it."

Other cases applying this same principle are: *Central of Georgia R. Co. v. Steverson* (1911), 3 Ala. App. 313, 57 So. 494; *Southern R. Co. v. Poetker* (1910), 46 Ind. App. 295, 91 N. E. 610; and *Sherman v. Fall River Iron Works Co.* (1861), 84 Mass. (2 Allen) 524. In the first-mentioned case an expenditure by plaintiff of the sum of one dollar would have obviated the effect of a nuisance for which plaintiff sought damages in the sum of five thousand dollars.

In the instant case the record is replete with testimony that the plaintiffs knew for a.long period prior to the accident that defendant's retaining wall was cracked and in a bad state of repair, that it was tipping to the eastward, and that at the spot where Mrs. Schiro fell the wall had tipped so much that it had caused the sharp slope in plaintiffs' land which is alleged to have caused such fall. Such prior knowledge of the plaintiffs is evidenced by the repeated protests which plaintiffs lodged with the defendant concerning the condition of the wall. However, at the point where Mrs. Schiro fell, the top of the wall projected $5\frac{1}{2}$ inches above the surface of the east edge of the $19\frac{1}{2}$ inch sloping strip of plaintiffs' land extending from the wall to the sidewalk. It would seem obvious that by a small expenditure of money the plaintiffs

could have filled in a little soil in order to level off this 19½ inch strip and thereby made it safe to walk on. However, there may be some reason not now apparent to us why it may not have been practicable for plaintiffs to have done so. This is a proper matter to be litigated in the new trial which we are directing.

Enough has been stated herein to indicate the "real controversy has not been fully tried" and for that reason we are exercising the authority vested in this court by sec. 251.09, Stats., to order a new trial.

At such new trial we would recommend a different wording with respect to the issues attempted to be submitted by questions 2 and 3 of the instant special verdict. As now worded the jury might be misled into concluding that the presence of the wall itself constituted the danger inquired about regardless of its condition. The issue sought to be embodied in question 2 should have been subdivided into two parts: (1) Whether there had been a failure of the defendant to properly maintain its retaining wall, and (2), if so found, whether such failure on defendant's part had so withdrawn support to the plaintiffs' immediately adjoining land as to create a dangerous condition thereon.

The testimony discloses that the breaking apart of the wall and its tipping eastward was a gradual process. Plaintiffs could not have acquired title by adverse possession to the strip of land lying between the wall and the lot line, as established by the surveyor Connell, prior to 1946 at the earliest. It will, therefore, be necessary that the new special verdict be so worded as to limit the inquiry with respect to the injury to plaintiffs' land, by defendant's failure to properly maintain its wall, to that which occurred subsequent to the date that plaintiffs acquired title to the strip on which Mrs. Schiro was walking when she lost her balance and fell.

*By the Court.*—Judgment reversed, and cause remanded for a new trial not inconsistent with this opinion.