HARTUNG and others, Plaintiffs and Respondents, vs. COUN-
TY OF MILWAUKEE, Defendant: CITY OF MILWAUKEE
and another, Defendants and Appellants.*

*November 4—December 3, 1957.*

* Motion for rehearing denied, with $25 costs, on February 4, 1958.

For the appellant city of Milwaukee there was a brief by *Walter J. Mattison,* city attorney, and *Ewald L. Moerke, Jr.,* assistant city attorney, and oral argument by *Mr. Moerke.*

For appellant city of Wauwatosa there was a brief by *Milton F. Burmaster,* city attorney, and *Herbert L. Mount,* special counsel, and oral argument by *Mr. Mount.*

For the respondents there was a brief and oral argument by *Bernard F. Mathiowetz* of Milwaukee, for Walter Hartung and Pearl Hartung, and by *Clarence G. Ehrle* of Milwaukee, for the Wauwatosa Stone Company.

MARTIN, C. J.  The quarry premises lie approximately 10 per cent within the Milwaukee city limits and 90 per cent within the city limits of Wauwatosa. Milwaukee county owns the Menomonee river parkway and drive which adjoins the quarry premises to the west. The property which includes the quarry was owned by the Hartung family since 1880. It was originally worked as a farm and in 1910 the first quarrying was done in the area by the plaintiff Walter Hartung and his father, Frederick Hartung. The farm consisted of 148 acres, from what is now North Ninety-Second street to the west side of the Menomonee river. The homestead and farm buildings were located at what is now North Ninety-Third and West Keefe streets. In 1914, land between North Ninety-Second and North Ninety-Ninth streets was conveyed, which later became Marion Ridge Subdivision. The Hartungs had a ten-foot-wide private driveway from the quarry premises to what is now North Ninety-Second street,

which was located approximately in the center of the area which now lies between West Concordia avenue and West Townsend street, which right of way was established in about 1917. Seven and one-half acres at the west of the farm were conveyed to Milwaukee county in 1929 for the parkway and drive. Frederick Hartung platted land which he had retained between North Ninety-Ninth and North Ninety-Second streets into a subdivision called "Continuation of Marion Ridge" in 1927 or 1928. This included the land which was in the private driveway. The driveway was abandoned as such when, because of platting, other public streets, then in the town of Wauwatosa, were opened, which provided public ingress and egress to the quarry to and from the main thoroughfares as West Burleigh street to the south and West Lisbon avenue to the north and when West Concordia avenue was opened it was used to North Ninety-Second street. Some of the lots on which the right of way had been were sold and others lost to Milwaukee by tax deed. Walter Hartung became the owner of the quarry under the will of his father subject to the life estate of his mother who died in 1940.

With the exception of 1944 and part of 1945, during which time World War II made explosives unobtainable and caused restrictions on building, the quarry was continuously operated by Walter Hartung until 1949 when he leased it to the Wauwatosa Stone Company, which company is the lessee operator under certain renewals of the lease. During all of this time the operations increased.

There are two driveways from the quarry, one at the northeast corner and the other at the southeast corner of the pit. Both enter on the public streets of the city of Milwaukee. Generally, the quarry operations involve blasting once or twice each day, crushing, grinding, and screening the stone and loading it into dump trucks of various sizes capable of hauling up to 18 tons of stone. The trucks then pull into the weighing station located at the southeast exit, where they are weighed and dispatched to their destinations. In

1955 the Wauwatosa Stone Company extracted 137,976 yards of stone from the quarry. The usual output runs from 50 to 150 truckloads shipped per day.

Along the west side of the quarry runs North Menomonee river parkway which has been established as a part of the Milwaukee county parkway system. The county has established a no-trucking regulation thereon and asserts that it must do so in order to protect it from a reverter in the deeds originally transferring the property to the county.

North One-Hundredth street running north from the quarry, and which is partly in Wauwatosa and partly in Milwaukee, eventually leads into West Lisbon avenue and beyond that to West Capitol drive, both streets of which are highways which are available for heavy trucking under state law and the ordinances of the city of Milwaukee. North One-Hundredth street north of the quarry, however, has been declared a boulevard and as such not available for heavy traffic. West Keefe avenue, running along the north edge of the quarry, is a residential street lying both in Milwaukee and Wauwatosa, and is covered by the heavy-trucking ordinances of both municipalities. North Ninety-Ninth street, running along the east edge of the quarry, is a residential street lying entirely in Milwaukee and subject to the no-heavy-trucking restrictions. The southeast exit of the quarry enters on North One-Hundredth street running south therefrom to intersect with West Concordia avenue which extends easterly. West Concordia avenue is a residential street subject to the no-heavy-trucking regulations of Milwaukee. All of the trucks going in and out of the quarry must use North One-Hundredth street regardless of what route they may eventually take. North One-Hundredth street at West Concordia avenue veers southwesterly and feeds into West Menomonee river parkway. West Argonne drive leads from the intersection of North One-Hundredth street and West Concordia avenue in a southerly direction,

and lies partly in Wauwatosa and partly in Milwaukee. It is also a residential street covered by the Wauwatosa and Milwaukee no-heavy-trucking ordinances. Running southerly it eventually leads into West Burleigh street which is available for heavy trucking. Both West Concordia avenue and West Burleigh street to the east eventually intersect with North Ninety-Second street.

During the past ten years much of the area surrounding the quarry premises has been built upon as residences, and as the population increased complaints increased with respect to the quarry operations. Milwaukee and Wauwatosa adopted ordinances restricting the use of streets against heavy trucks so that, by the enforcement of the ordinances by arrests of truck drivers, the quarry business was forced to close down from December 5, 1955, to about June 1, 1956, when Milwaukee permitted, for a time, use of North Ninety-Ninth and North One-Hundredth streets north to West Lisbon avenue. Failing in their attempt to have Milwaukee and Wauwatosa designate routes for the trucks, plaintiffs commenced this action.

The action was originally started on a summons and complaint and order to show cause and a temporary injunction restraining the enforcement of the heavy-trucking ordinances of Milwaukee and Wauwatosa against the plaintiffs. This was followed by an injunction *pendente lite* which permitted ingress and egress to and from the quarry by three routes: (1) North One-Hundredth street and West Argonne drive to West Burleigh street; (2) West Concordia avenue and North Ninety-Second street between West Lisbon avenue and West Burleigh street; (3) North Ninety-Ninth and North One-Hundredth streets to West Lisbon avenue. The court also stipulated certain hours within which trucking would be permitted, and directed that the plaintiffs were to attempt, in so far as possible, to direct an equal number of trucks over each of the three routes mentioned.

The Wisconsin statutes involved are:

Sec. 80.47 "The owners of land abutting on any highway, street, or alley shall have a common right in the free and unobstructed use thereof to its full width, and no town, village, city, county, company, or corporation shall close up, use, or obstruct any part of the highway, street, or alley so as to materially interfere with its usefulness as a highway. . . ."

Sec. 85.55 "Cities and villages may by ordinance or resolution set aside any highway under their jurisdiction and declare the same to be heavy-traffic routes and may provide for the use thereof and regulate the same by placing proper signs thereon. Whenever any city or village shall set aside and designate highways as heavy-traffic routes, they may provide for the use of and regulate traffic on any such highway and designate what character and type of vehicle may travel thereon, provided that no city or village shall prohibit the ordinary use of any highway for the purpose of obtaining orders for and delivering or moving supplies or other necessary commodities to or from any place of business or residence fronting on such highway."

The Milwaukee ordinance involved is:

"Section 101–101. Heavy-Traffic Routes. (a) No person or persons shall operate any vehicle within the classification of heavy traffic, as defined by section 101–2 (31), over any highway or highways in any residence districts established in accordance with section 16–2; provided, however, that in said residence districts heavy traffic shall not be prohibited on highways in the federal-aid urban system, on connecting highways in the state trunk highway system, and on highways designated and declared to be arteries for through traffic by section 101–100, unless said highway or portions thereof are declared by section 101–102 to be boulevards or pleasureways on which heavy traffic is expressly prohibited by section 101–104 or unless said highways or portions thereof are listed in section 101–101 (b) as specific highways upon which heavy traffic is prohibited; and provided further that nothing in this section shall prohibit the

least possible ordinary use of any highway in residence districts for the purpose of obtaining orders for and delivering or moving supplies or other necessary commodities to or from any residence or place of business fronting on such highway."

The Wauwatosa ordinance is sec. 11.08 (19) (a), (b), and (c) which regulates the weight limits of vehicles on certain streets, including West Argonne drive and other streets north and west of the quarry premises. It prohibits the operation of trucks with a gross weight of three tons or more on said streets, and provides in par. (c):

"Nothing herein shall be deemed to prohibit the ordinary use of any of the above streets for the purpose of obtaining orders for and delivering or moving supplies or other necessary commodities to or from any place of business or residence fronting on the said streets."

### City of Milwaukee Appeal.

It was held by the trial court, and is conceded by Milwaukee, that the operation of the quarry was and is a valid pre-existing nonconforming use, and that the plaintiffs are entitled to ingress and egress to and from the quarry in order to carry on their business. This right is reserved to them under the proviso contained in the last portion of the Milwaukee ordinance 101–101 (a).

Appellant contends that its ordinance is valid and applicable to the plaintiffs. We agree. Sec. 85.55, Stats., delegates to the city the authority to restrict heavy traffic to certain designated routes provided only that it shall not prohibit the "ordinary use" of the streets by any place of business or residence fronting on any street for the purposes enumerated. The "ordinary use" is whatever use the nature of the business requires,—in this case, the transporting of stone products to and from the quarry. Plaintiffs are not entitled to unrestricted use of Milwaukee streets. The ordinance may

be validly applied to them to restrict their use of all streets except such as will provide them with ingress and egress to and from the quarry. It is not the ordinance which is invalid in this case, but appellant's interpretation of it.

It is the position of Milwaukee that it has provided plaintiffs with ingress and egress by permitting them to operate their trucks to and from the quarry on North One-Hundredth street and Argonne drive. The evidence shows that West Argonne drive is not constructed for heavy traffic. Moreover, from its commencement at the intersection with North One-Hundredth street and West Concordia avenue, for more than half the distance south to West Burleigh street, Argonne drive lies within the city of Wauwatosa, and heavy trucking is prohibited thereon by Wauwatosa. The result is that the trucks, after traveling southward the short distance from the quarry to Argonne drive or northward from West Burleigh street on Argonne drive to the limits of the city of Wauwatosa, are halted when they enter Wauwatosa. This amounts to leading the trucks into a blind alley, and is á denial of the plaintiffs' right of ingress and egress. The statutes relating to ingress and egress, secs. 80.47 and 85.55, Stats., as well as the ordinances based thereon, must be construed in the light of present-day operations of a quarry.

By several annexations, beginning in 1953, Milwaukee extended its western boundary in an irregular line which included within its limits only a narrow strip of the quarry on the east, but extended west at its south edge some distance beyond North One-Hundredth street. This made the plaintiffs owners of land abutting on North One-Hundredth street in the city of Milwaukee. Sec. 80.47, Stats.; *Royal Transit v. West Milwaukee* (1954), 266 Wis. 271, 63 N. W. (2d) 62. Thus, Milwaukee took upon itself the burden of providing ingress and egress. As pointed out by the trial court, that includes the use of public streets leading to and from

the quarry at North One-Hundredth street to and from an unrestricted thoroughfare.

This is an action in equity; the court was called upon to exercise its broad powers to do that which would preserve the plaintiffs' rights and protect the rights of the municipalities. Although objection was made to a jury trial on the issues of fact, the case was tried as an equity action and the trial court regarded the jury verdict as merely advisory. This is permissible practice. See *Fraedrich v. Flieth* (1885), 64 Wis. 184, 188, 25 N. W. 28.

Questions as to reasonable ingress and egress were submitted to the jury in an inquiry as to four routes. These included the three routes designated in the temporary order described above and a fourth, which was North One-Hundredth street, West Concordia avenue, and West Colonial drive to and from West Burleigh street. The jury's answers were "No" to all the routes except North One-Hundredth street and West Concordia avenue to and from North Ninety-Second street, as to which route its answer was "Yes." The court's conclusion followed that of the jury.

Both the court and jury heard the evidence and viewed the quarry premises and the routes inquired of. Exhibit 47 shows that all of the streets in the vicinity of the quarry are surfaced with either crushed stone or tar-covered gravel. It shows that West Concordia avenue between North One-Hundredth and North Ninety-Sixth streets is crushed stone and from North Ninety-Sixth to North Ninety-Second it is paved with eight-inch reinforced concrete. Argonne drive for its entire length in the city of Wauwatosa is aggregate base (gravel base mixed with bituminous surface) and seal coat. It is unimproved for the distance between the Milwaukee city limits (West Auer avenue) and West Burleigh street which is concrete pavement. The exhibit shows that

none of the streets surrounding the quarry are streets capable of handling the quarry traffic.

The city engineer of Wauwatosa testified that streets constructed as Argonne drive (aggregate base and seal coat) do not hold up under the impact of heavy loads; that to handle a reasonable amount of truck traffic, without encountering an expensive maintenance problem, a road should be constructed of eight or nine-inch reinforced concrete. He also testified that the width of the surfaced portion of Argonne drive is between 15 and 20 feet, which is pretty narrow for truck traffic; the lawns come to the edge of the surfacing; there are no curbs.

On the other hand, although a portion of West Concordia avenue is crushed stone, it is concrete between North Ninety-Second and Ninety-Sixth streets and in the concrete section it is 30 feet wide. It appears from Exhibit 47 that the distance from North One-Hundredth street east to the concrete on West Concordia is less than the distance south to the concrete on West Burleigh via Argonne drive.

In discussing the question whether the truck traffic should be directed over more than one route, the trial court stated that with but one route it will be necessary to provide only one roadway sufficient to carry such traffic. It also pointed out that so far as the number of homes along the various proposed routes was concerned, that recommended by the jury and designated by the court had practically the same in number as the Argonne drive route. The mere fact that the Argonne drive route is the shortest of the routes proposed is not in itself sufficient to require the court to choose it, in the light of all the evidence from which the court could conclude that other factors, as referred to above, make it less desirable than the route designated.

There is ample evidence to sustain the view of the trial court that the route selected is a proper one.

*City of Wauwatosa Appeal.*

The counterclaim of the city of Wauwatosa alleged that various phases of the plaintiffs' quarry operations constitute a public nuisance and asked for the abatement of such nuisance.

This is an action in equity and the principles of equity apply. Injunctive relief is addressed to the sound discretion of the trial court. It should be granted only where there is an irreparable injury. *Maitland v. Twin City Aviation Corp.* (1949), 254 Wis. 541, 37 N. W. (2d) 74; *Schneider v. Fromm Laboratories* (1952), 262 Wis. 21, 53 N. W. (2d) 737. Courts of equity are reluctant to enjoin the operation of a legitimate business. As stated in 66 C. J. S., Nuisances, p. 875, sec. 111 c:

"A lawful business should not be enjoined because of trifling or imaginary annoyances, such as may offend the taste or disturb the nerves of a fastidious or oversensitive person, or because it causes some slight inconvenience or irritation to residents in the vicinity, or because it may shock the artistic and esthetic sense of the neighborhood. In order to warrant an injunction, the injury must be real, serious, material, and permanent, or potentially permanent; the right to the injunction must be clear; and the reasons for granting it strong and weighty."

Plaintiffs have operated the quarry for many years. Their business is that of removing natural resources from the earth and it cannot be carried on anywhere else. The quarry was there before the people moved in and built their residences in the vicinity. They knew or should have known it was there and inquiry would have revealed facts regarding its operation which would have enabled them to anticipate the annoyance of which they now complain. It is probable that in the purchase of their property the proximity of the quarry was considered. Plaintiffs' operations involve blasting, grinding,

and crushing stone, which necessarily produce noise and dust. While the evidence shows that production at the quarry has increased considerably through the last ten years, it also shows that during the same period the area surrounding the quarry on three sides has been almost entirely built up and houses are still being built there. There is no evidence that anyone moved from the area because of the quarry, and one of the witnesses, George P. Schaetz, a general contractor who has built and sold a number of houses in the area, testified that the price he received for them was not affected by reason of the quarry operations.

Appellant produced the testimony of witnesses, owners of homes located in close proximity to the quarry, who testified as to the noise of blasting, limestone dust in the air and in and on their houses, rocks falling on their property after blasting, and the cracking of plaster walls. Many of them testified, however, that they suffered no physical discomfort or injury to their health by reason of the blasting, dust, etc. Jules E. Jenkins, an engineer specializing in the measurement of seismic disturbances, who made a number of tests in the area, testified that within the limits of the ordinary physical property of the quarry plaintiffs "cannot put enough dynamite—no matter how they use it—into a blast over there that will break property—or, plaster beyond 300 feet." He also testified that rocks of the size in evidence would not be projected by the blasting farther than about 40 feet.

A motion was brought by Peter A. Mars on a proposed interpleader on behalf of himself and others similarly situated on North One-Hundredth street within an area of two to five blocks from the quarry. It is noteworthy that the proposed cross complaint of Mars alleges a nuisance only in respect of the use of the streets by plaintiffs' trucks. No nuisance is alleged with respect to the operations at the quarry premises.

Questions of fact essential to a determination on the question of public nuisance were submitted to the jury in two general classifications: One, as to noise, dust, broken rock, and blasting vibrations from the quarry premises; the other, as to noise, dust, and spilling from dump trucks using the North One-Hundredth street and West Argonne drive route. In effect, the jury found there was no unreasonable emission of noise, dust, broken rock, and blasting vibrations from the quarry premises to territory in the vicinity; it found there was an unreasonable emission of noise, dust, and spilling from a substantial number of trucks using the Argonne drive route and that an efficient cause of such emission was the manner in which the trucks were loaded and operated; that this caused a substantial impairment to the comfort, use, and enjoyment of the property of owners along such route ((b) (1) of question 2).

Adopting the jury's findings, the trial court held that appellant failed to establish any right to have the quarry declared a public nuisance. From the evidence before it the trial court was warranted in so holding. We are not concerned with the distinction between a public nuisance and a private one, as the holding is that there was no nuisance as to the operations of the quarry itself. The jury found there was a nuisance as to the operation of the trucks along the Argonne drive route. In the judgment the trial court directed the trucks along the Concordia avenue route. This has the effect of abating the nuisance found by the jury.

Appellant contends that the trial court erred in the submission of questions to the jury and in its instructions. The argument is immaterial, since the trial court itself decided the issues and its findings would not be affected by errors of this nature, if any there were.

Appellant also contends that the court erred in rejecting an offer of proof by the testimony of 40 witnesses, residents

of the city of Milwaukee, as to the effect of the quarry operations upon them and their property. A public nuisance is "'conduct which interferes with the use of a public place or with the activities of an entire community.'" *Schiro v. Oriental Realty Co.* (1956), 272 Wis. 537, 546, 76 N. W. (2d) 355. It was appellant's burden to prove that the quarry operations impaired a substantial portion of the property and people in the city of Wauwatosa. As pointed out by the trial court, facts tending to show that people and property in the city of Milwaukee were affected by such operations would be of no help in meeting that burden. This evidence was cumulative as to nuisance, and we are not concerned with the public or private nature of it. We are satisfied that there was sufficient evidence from which the court could find that no nuisance existed in fact.

We see no error in the exclusion of testimony by Carl Gieschen, city assessor of Wauwatosa, with respect to the difference between present assessments on property in the vicinity of the quarry and what they would be if the quarry were not there. The court ruled that the quarry being there, it would be conjectural to consider what the assessed values would be if it were not there. An offer of proof on the market value of real estate in the vicinity, by the testimony of George Hummert, was likewise rejected, and for the same reason.

Appellant's counterclaim was dismissed "on its merits without prejudice to using the evidence adduced within the limits which may be allowed by law in future actions, if any, which will include evidence, if any, which may develop subsequently to dismissal."

This action grew out of the refusal of Wauwatosa and Milwaukee to designate a route which would provide plaintiffs with the ingress and egress to which they are admittedly entitled. The defenses alleged appear to us to arise out of the same uncompromising attitude. Most of the

discomforts and inconveniences imposed upon residents of the area are unavoidable incidents to the operation of a legitimate and beneficial enterprise. *Stearns v. State Committee on Water Pollution* (1956), 274 Wis. 101, 79 N. W. (2d) 241. There is no showing that plaintiffs do not employ such modern scientific and industrial methods as minimize, so far as possible, the effects of their business on the people and property in the vicinity of the quarry. The complaints are largely with respect to overloading of the trucks and their operation on streets which have not been constructed to carry heavy traffic. The judgment provides that plaintiffs' trucks shall be so loaded and operated that there will be no spilling and that the streets along the route designated shall be so constructed and maintained by the defendant cities as not to be a cause of spilling from properly loaded and operated trucks. Compliance with these requirements should have the effect of minimizing the conditions of noise, dust, and spilling.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting in part*). I must respectfully dissent from that part of the court's opinion and mandate which affirms the dismissal of the city of Wauwatosa's counterclaim for abatement of a public nuisance.

It is apparent from a reading of the learned trial court's memorandum opinion that he possessed a misconception of what constitutes a public nuisance as applied to the fact situation present in the instant appeal, and that such mistake of law materially affected the determination reached as to the nuisance issue.

Sec. 5.075 of the code of the city of Wauwatosa prohibits the discharge or emission into the atmosphere within the corporate limits of the city of Wauwatosa, and within one mile therefrom, of any sand, dust, dirt, ground limestone, or ground sandstone as the result of a commercial or industrial operation in such volume and with such frequency as to result

in a noticeable and measurable deposit of such substance upon adjacent or neighboring improved real estate in any area where the density of population exceeds fifty (.50) persons per square mile. The ordinance provides a penalty or forfeiture against the owner or person in charge of such operation and specifically declares the act of discharging such sand, dust, dirt, ground limestone, or ground sandstone into the atmosphere a public nuisance and subject to abatement in the manner provided by law. Such ordinance was in effect for more than eight months prior to the date of the commencement of plaintiffs' action.

There can be no doubt that a city in this state is empowered to enact such an ordinance by the provisions of sec. 62.11 (5), Stats. Such statute expressly confers the power to enact ordinances for the protection of the "health, safety, and welfare of the public." As early as 1878 the United States supreme court in *Northwestern Fertilizing Co. v. Hyde Park* (1878), 97 U. S. 659, 24 L. Ed. 1036, held that the police power of a municipality extends to declaring something to be a nuisance which affects public health. For further authorities on the right of a municipality to declare certain acts or conditions to be a public nuisance, see *Sullivan v. Los Angeles* (1953), 116 Cal. App. (2d) 807, 254 Pac. (2d) 590; *Rowe v. Pocatello* (1950), 70 Idaho, 343, 218 Pac. (2d) 695; 6 McQuillin, Mun. Corp. (3d ed.), p. 578, sec. 24.63.

The learned trial court, in its memorandum opinion, took the position that, in the absence of such ordinance, the number of people discommoded by the emission of dust from the quarry was too few in proportion to the total population of the city of Wauwatosa to permit of a finding of public nuisance. In so holding, the trial court gave no consideration to the effect of sec. 5.075 of the Wauwatosa city ordinances. This ordinance rendered such issue of the proportion of total city residents affected by the nuisance

wholly immaterial on the question of whether a public nuisance existed. Furthermore, even at common law, the trial court applied too restrictive a test as to this element of a public nuisance. If an entire neighborhood is adversely affected, this is sufficient to constitute a public nuisance, assuming the other elements of nuisance to be established. 39 Am. Jur., Nuisances, p. 288, sec. 10, and 66 C. J. S., Nuisances, p. 732, sec. 2, note 53.

While there was considerable conflict in the testimony as to the adverse effects upon the surrounding neighborhood as a result of the blasting incident to the quarry's operation, this is not true with respect to evidence relating to the emission of sufficient dust to result in a noticeable and measurable deposit upon neighborhood residential property.

The testimony showed that in dry weather when the wind was blowing, the entire neighborhood downwind from the quarry would be covered and clouded with fine limestone dust which accumulated on vegetation, windows, screens, roofs, eaves and gutters, lawn furniture, and other places on the exterior of the houses. Housewives and others who testified described the substantial amount of dust which filtered into houses even with windows and doors closed producing considerable discomfort during the hot weather. Several women testified to the necessity for dusting and cleaning as much as two and three times a day to try to keep the dust under control. It was claimed by witnesses that at times the dust hung in clouds over the quarry so that persons on one side could not see the homes on the other side of the quarry. Children were described as coming in from play during dust periods with their eyes watering and smarting. One woman who testified described a pre-existing arrested case of tuberculosis and claimed that the conditions were aggravating her physical difficulties.

Question 2 (a) of the special verdict submitted to the jury read as follows:

"Question 2: During a substantial portion of the period since January 1, 1950, was there

"(a) an unreasonable emission of noise, dust, broken rock, and blasting vibrations from the quarry premises, to territory in the vicinity and now in the city of Wauwatosa, from the operation of the quarry in question?"

The jury answered such question "No" and the trial court adopted such finding in its memorandum opinion. It will be noted that the conjunction *"and"* instead of *"or"* was used in joining together the alleged harmful activities of unreasonable emission of noise, dust, broken rock, and blasting vibrations. As a result of this if the jury were satisfied that there was an unreasonable emission of dust but not of noise, broken rock, and blasting vibrations, they might well have concluded that a "No" answer was required. This aspect of the verdict is not commented upon in the trial court's memorandum opinion.

The majority opinion stresses the fact that the quarry was in operation before the surrounding area developed into a residential neighborhood. This is not a controlling consideration according to the weight of authority. 39 Am. Jur., Nuisances, p. 327, sec. 44, states:

"The fact that a business was established in the open country remote from habitations will not defeat a proceeding for the maintenance of a nuisance after the land in its vicinity has been built up and occupied; such business must give way to the rights of the public and when building and habitations approach the place of its location means must be devised to avoid the nuisance, or it must be removed or stopped." See also *Hadacheck v. Los Angeles* (1915), 239 U. S. 394, 410, 36 Sup. Ct. 143, 60 L. Ed. 348; *Brede v. Minnesota Crushed Stone Co.* (1919), 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092; and *Collins v. Sargent* (1928), 89 Cal. App. 107, 264 Pac. 776.

While, therefore, not material, except as to the equities of the parties, it might be mentioned that the Hartung family

encouraged the development of a residential area in the neighborhood of the quarry by selling off part of their land for such purpose. Furthermore, such development of the surrounding lands into a residential area had already largely taken place when the plaintiffs Hartung leased the quarry to the plaintiff Wauwatosa Stone Company in 1949. There is scarcely any comparison between the harmful effects of the quarry operation prior to such leasing and those which occurred thereafter. This is because production after the leasing was stepped up approximately fourfold. For example, in 1949 only 33,420 cubic yards of stone were extracted from the quarry, while in 1955 production had grown to 137,976 cubic yards.

Because of the errors of law committed by the trial court in passing upon the nuisance issue, that part of the judgment which dismissed Wauwatosa's counterclaim should be reversed, and the cause remanded for a new trial as to such counterclaim.

I am authorized to state that Mr. Justice WINGERT and Mr. Justice FAIRCHILD concur in this dissenting opinion.

The following opinion was filed February 4, 1958.

MARTIN, C. J. (*on motion for rehearing*). On its motion for rehearing the appellant city of Wauwatosa argues that this court gave undue weight to the fact that the quarry existed and was in operation before the surrounding area was built up as residential. Neither the trial court nor this court gave any unnecessary weight to the fact of its prior existence. That fact is not controlling, but is a fact to be considered along with all the other facts and circumstances.