BOND, Respondent, vs. WOJAHN, Appellant.

*February 9—March 8, 1955.*

For the appellant the cause was submitted on the briefs of *Lloyd D. Mitchell* of Oshkosh.

For the respondent there was a brief by *Gruhle & Fessler,* attorneys, and *Henry A. Detling* of counsel, all of Sheboygan, and oral argument by *Mr. Detling.*

BROADFOOT, J. The following statutes are cited by the parties:

"Sec. 30.01 (4)(c) The boundaries of lands adjoining waters and the rights of the state and of individuals in respect to all such lands and waters shall be determined in conformity to the common law so far as applicable. . . ."

"30.02 (1) (b) It shall be unlawful to deposit any material or to place any structures upon the bed of any navigable water where no shore line has been established or beyond such shore line where the same has been established, *provided, however, that the public service commission may grant to any riparian owner the right to build a structure, or to maintain a structure already built and now existing, for his own use, if the same does not materially obstruct navigation, or reduce the effective flood flow capacity of the stream or is not detrimental to the public interest. Upon complaint by any person, the public service commission shall hold a hearing thereon to determine whether or not such present structure, or one proposed to be built, does materially obstruct navigation, or reduces the effective flood flow capacity of the stream or is detrimental to the public interest.*

"(c) It shall be unlawful for any riparian proprietor to extend his wharf or pier into navigable water beyond the dock line as established, if such extension materially interferes with, or obstructs navigation. *Upon any complaint made to the public service commission said commission shall proceed to hold a hearing thereon pursuant to the provisions of section 30.02 (1) (b).*

"(d) All piers or wharves extending beyond the natural shore or the established shore line shall be so constructed as to allow the free movement of water underneath and in such

manner as will not cause the formation of land upon the bed of the water."

"31.25 Every dam, bridge, or other obstruction constructed or maintained in or over any navigable waters of this state in violation of the provisions of this chapter *or of chapter 30,* and every dam not furnished with a slide, chute, or other equipment prescribed by the commission, is hereby declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

Ch. 30 of the statutes is entitled "Navigation" and ch. 31 is entitled "Water Power." The italicized portions of the above statutes were added in 1949 and thereafter.

From the authorities cited in the briefs and from those cited in 39 Op. Atty. Gen. 230, and an article by Adolph Kanneberg in 1946 Wisconsin Law Review, 345, the following general rules would be applicable:

When Wisconsin became a state the lands under the navigable streams located here were transferred to the state and the state was permitted to determine for itself to what extent it would retain and exercise its rights over lands under navigable streams. In Wisconsin, as a matter of state policy, the owner of the upland or shore bordering upon a navigable stream was given a qualified title to the center of said stream. Such title is subordinate to the rights of the state to secure and preserve to the people the full enjoyment of navigation and rights incident thereto, and the right of the state to improve the stream for navigation. In some respects the rights of riparian owners on navigable streams and navigable or meandered lakes differ, but one of the common rights is the right to build a pier in front of his land a sufficient distance to reach actually navigable water.

Originally the legislature regulated the respective rights of riparian owners and of the public. The legislature itself granted franchises or permits for the construction of dams

and log booms in particular. Later this authority was vested in the railroad commission, now the public service commission of Wisconsin. Because of the administrative difficulties involved, the commission has interpreted the statutes referring to structures and obstructions within navigable waters as referring to unlawful structures that actually interfere with navigation and the rights incident thereto. When sec. 30.02, Stats., was amended the commission adopted the same policy with respect thereto. There are literally thousands upon thousands of piers erected in and over the navigable waters of this state. It is only when complaints are made that the commission is able to investigate and, after hearing, order the removal or the shortening of the piers where necessary to protect the public rights.

Plaintiff was the owner of two boats. He testified that it was necessary to extend his pier 80 feet into the river in order to successfully launch his larger boat. This he explained was necessary because of a rock ledge running parallel to his pier and to the west thereof which extended within 18 inches of the surface at the ordinary stage of the water in the river. There were also other piers to the east that extended 80 feet or more into the river and it was necessary, because of wind and wave action, to launch his boat from that distance out in order to avoid striking the ledge or another pier.

The defendant offered nothing except this one isolated incident to show that plaintiff's pier in any way interfered with navigation. It is his opinion that the statutes should be construed literally and that any structure can be built only upon a permit by the commission and that any structure not so built is a nuisance *per se*. He quotes the strict liability rule as to nuisances and concludes that the plaintiff cannot recover, that the contributory negligence of the defendant is no defense, and that the judgment is in error so far as it

awards damages to the plaintiff and denies to the defendant the amount of his damages under his counterclaim.

The construction given the statute by the commission is practical and it has been in force for many years, particularly under the provisions of ch. 31, Stats. We concur in its interpretation of the statute.

The defendant pleaded as an affirmative defense that the plaintiff violated the provisions of ch. 30, Stats., and erected a structure without a permit and one that interfered with navigation. The burden of proof, so far as this affirmative defense is concerned, was upon the defendant. He failed to show in what way the pier maintained by the plaintiff actually interfered with navigation, except by showing that in one instance the defendant, operating at night without lights, with a motor that was giving trouble, running far from the marked channel and at what could be termed as excessive speed considering his ability to see, ran into plaintiff's pier. This isolated instance does not prove that plaintiff's pier was interfering with the navigation rights of the public and the trial court was correct in determining the case as it did.

Upon this appeal the defendant also calls attention to 33 USCA, Navigation and Navigable Waters, sec. 403, which prohibits the building of a pier in any navigable river except on plans recommended by the chief of engineers and authorized by the secretary of war. This federal statute was not raised in the court below and probably is not properly before this court. Under the commerce clause of the United States constitution the federal government has certain control over navigation and its incidents, including improvement of navigable rivers. This right is paramount to but not exclusive of state control of the subject, which is much broader and extends to a great many regulations with which the federal government does not concern itself. *State ex rel. Thomas Furnace Co. v. Milwaukee*, 156 Wis. 549, 146 N. W. 775.

It is our understanding that the regulation of piers such as the one in question is left for state regulation. In any event, there was no allegation in the answer that the plaintiff had no federal permit, nor was any proof offered on the subject.

*By the Court.*—Judgment affirmed.

Currie, J., took no part.