77 F.3d 484
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mayme HOXSEY, as the surviving Spouse of the Deceased, Byron
Hoxsey, Plaintiff-Appellant,
v.
Peter BRATSOS and Marna Bratsos, Defendants-Appellees.
 No. 95-1381.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 8, 1995.
Decided Feb. 15, 1996.
 
 Before FLAUM, Circuit Judge, EASTERBROOK, Circuit Judge, and RIPPLE, Circuit Judge.
 
 ORDER
 
 1
 In October 1991 defendants Peter and Marna Bratsos purchased lakefront property on Big Lake Chetac in Birchwood, Wisconsin. On September 6, 1992, plaintiff Mayme Hoxsey and her husband Byron were fishing on the lake. On that sunny Sunday afternoon their boat struck the defendants' dock. Mayme Hoxsey was thrown overboard by the collision and was injured. Her husband drowned trying to rescue her. Mayme Hoxsey brought suit against the Bratsoses for her injuries and damages, claiming that the Bratsoses were negligent in maintaining a submerged or partially submerged dock that they should have known tourists and boaters could not see.[1] She asserted that the Bratsoses' dock was a public nuisance and that their negligence caused Mrs. Hoxsey's injuries and Mr. Hoxsey's wrongful death. The defendants denied that they were negligent or that their dock was a public nuisance. They claimed that the dock was visible to boaters and tourists, and that any injuries, losses or damages sustained by the Hoxseys resulted from their own negligence.
 
 
 2
 Following a trial on the issues, the district court presented to the jury a special verdict form. The jury answered two of the twelve questions on the form: whether the defendants were "negligent in the manner in which they maintained the boat dock on their premises on Lake Chetac" and whether the defendants "maintain[ed] a nuisance." The jury answered "No" to each question. The jury did not determine whether the Hoxseys were contributorily negligent and did not award damages. Mrs. Hoxsey appeals the district court's judgment in favor of the defendants and its denial of her motion for a new trial.
 
 I.
 
 3
 Before we consider the merits of Mrs. Hoxsey's submissions on appeal, we must clarify the standard of review. It is not our role to engage in a de novo review of the evidence and then to determine, as Mrs. Hoxsey urges, whether the jury verdict was against the clear weight of the evidence. Rather, we view the jury's decision with great deference and will not set it aside as long as a reasonable basis exists in the record to support that verdict.
 
 
 4
 "The test in this circuit for reviewing a jury verdict on appeal is not whether it was against the weight of the evidence, but whether there is a reasonable basis in the record for the verdict.... If this test is met, we will not reweigh the evidence but will let the verdict stand."
 
 
 5
 Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir.1995) (quoting Carmel v. Clapp & Eisenberg, P.C., 960 F.2d 698, 703 (7th Cir.1992)); see also Calusinski v. Kruger, 24 F.3d 931, 936 (7th Cir.1994); Winston Network, Inc. v. Indiana Harbor Belt R.R., 944 F.2d 1351, 1358 (7th Cir.1991). In addition, our review of the district court's denial of a motion for new trial is based on the abuse of discretion standard.
 
 
 6
 While the federal law standard governing new trial motions is somewhat less severe than the Illinois JNOV standard (a new trial may be granted only if the jury's verdict is against the clear weight of the evidence, see Ross v. Black & Decker, 977 F.2d 1178, 1182 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993)), we review denials of new trial motions deferentially for an abuse of discretion. See id.
 
 
 7
 Bachenski v. Malnati, 11 F.3d 1371, 1375 n. 4 (7th Cir.1993) (citations omitted); see also Calusinski, supra. With the proper scope of appellate review before us, we turn to the merits of the appellant's arguments.
 
 II.
 
 8
 The allegations in Mrs. Hoxsey's complaint required her to prove that the defendants were negligent in the maintenance of their boat dock and that they had created a public nuisance. The Supreme Court of Wisconsin has defined negligence as "the want of ordinary care under the circumstances." Koback v. Crook, 366 N.W.2d 857, 861 (Wis.1985). The jury in this case was given the proper Wisconsin jury instruction on negligence, which included as part of the definition an act or failure to act "under circumstances in which a reasonable person would foresee that by his or her action or failure to act, he or she will subject a person or property to an unreasonable risk of injury or damage." See Nischke v. Farmers & Merchants Bank & Trust, 522 N.W.2d 542, 550 (Wis.App.1994) (presenting same proper instruction). The Illinois Supreme Court has also set forth this definition of nuisance:
 
 
 9
 As commonly used, [nuisance] connotes a condition or activity which duly interferes with the use of land or of a public place.... Conduct which interferes with the use of a public place or the activities of an entire community is called a public nuisance. This is criminal, and is also tortious to those persons who are specially harmed by it.
 
 
 10
 Schiro v. Oriental Realty Co., 76 N.W.2d 355, 359 (Wis.1956) (quoting Professor Seavey in "Nuisance: Contributory Negligence and other Mysteries," 65 Harv.L.Rev. 984) (also holding that contributory negligence is a defense to a nuisance suit). Id. at 360.
 
 
 11
 Mrs. Hoxsey contends that she clearly proved that the Bratsoses' dock frame, negligently left without warning of its wholly or partially submerged condition, created a nuisance, a dangerous condition with a significant risk of harm. She invites the court's attention to the testimony of Walter Hesse, a long-time property owner at Big Lake Chetac, who believed that the Bratsoses' pier was in bad shape ("It was in the worst condition I have ever seen any docks, and I have seen a lot of docks on that water." Hesse testimony, Tr. VI at 22), and who estimated that, at the time of the accident, the end of that dock "was not more than one or two inches above the water." (Id. at 46). She also refers us to the testimony of the dock expert Frederick Hunt, who testified that the dock was "an unseeable hazard in or out of the water," (Hunt testimony, Tr. VII at 73), and to the statement of Peter Spear, an expert in visual psychology, that the dark-colored dock blended in with the wooded background. (Spear testimony, Tr. VI at 92). Mrs. Hoxsey contends that the defendants' negligence in maintaining their dock was reflected in Mr. Bratsos' admission that he never intended to maintain the dock. (Bratsos testimony, Tr. II at 5).
 
 
 12
 The jury weighed that evidence against other testimony, including that given by the two men who came to the rescue of the plaintiffs, John Pierce and Mark Wagner. The men had been fishing that day and had witnessed the accident. They testified by deposition that the Bratsos dock was visible easily from halfway across the lake and that the end of the dock was two feet above the water rather than submerged. (Wagner deposition, R. 56 at 23, 28; Pierce deposition, R. 57 at 52.) Christopher Wunrow, the conservation warden for the Wisconsin Department of Natural Resources on Big Lake Chetac who was trained to investigate boating accidents, arrived at the scene of the Hoxsey accident one-half hour after it occurred.[2] At his deposition he stated that the Bratsos dock was a common type of dock and that it was tipped over as a result of the accident. (Wunrow deposition, R. 47 at 40.) He also testified that he "had no reason to believe that the dock was not visible." (Id. at 105.) Mr. Hunt, the plaintiff's dock expert, testified that the Hoxseys passed seven docks before they arrived at the Bratsos dock; three extended into the lake more than thirty feet, and four "stuck out more than twenty feet." Tr. VII at 62. There was disputed testimony concerning how much of the Bratsos dock, thirty-two feet in total length, was on the lake; however, the complaint states that approximately half of the dock rested on land and half extended into the water. R. 2, Count I, p 6. The jury could reasonably could have concluded that the dock was neither submerged nor too long in relation to the other docks around it.
 
 
 13
 Given the applicable standard of review, we approach deferentially the jury's conclusion that the defendants were not negligent. The jury also decided that the defendants' dock was not a public nuisance, that the defendants' failure to maintain their dock was not "conduct which interferes with the use of a public place or the activities of an entire community is called a public nuisance." Schiro, 76 N.W.2d at 359. Wisconsin law concerning the rights of riparian owners of lakeside property supports this determination:
 
 
 14
 Riparian owners have certain rights based upon title to the ownership of the bank or upland. Among other such riparian rights is included the right of access and to construct in front of their land piers long enough to reach water actually navigable for such boats as are in use or appropriate to the lake.
 
 
 15
 Colson v. Salzman, 75 N.W.2d 421, 423 (Wis.1956) (upholding dismissal of complaint alleging that 140-foot pier was public nuisance); see also Bond v. Wojahn, 69 N.W.2d 258, 260 (Wis.1955) ("[O]ne of the common rights [of riparian owners on navigable or meandered lakes] is the right to build a pier in front of his land a sufficient distance to reach actually navigable water.").
 
 
 16
 We have no difficulty in concluding that there is a reasonable basis in the record to support that verdict. It is the paramount function of a jury to sift through conflicting evidence; a reviewing court does not reweigh that evidence as long as the record reveals a reasonable basis for the jury's decision. Stone v. City of Chicago, 738 F.2d 896, 900 (7th Cir.1984). The eye-witness testimony of Pierce and Wagner clearly presented a reasonable basis for the jury verdict and other evidence supported their statements. Those eye-witnesses to the accident, who were not shown to be biased and who presented a concise description of the plaintiffs' accident when the Hoxsey boat hit the Bratsoses' dock on that clear sunny day, offered credible evidence of the events at issue. "The reviewing court 'does not judge the credibility of witnesses.' " Futrell v. J.I. Case, 38 F.3d 342, 346 (7th Cir.1994) (citation omitted). We conclude that the testimony of Pierce and Wagner, supplemented by that of Warden Wunrow and others, presented a reasonable basis for supporting the verdict on the issues of negligence and nuisance.
 
 III.
 
 17
 Mrs. Hoxsey's appeal focuses mainly on challenges to a number of trial court rulings.[3] However, these contentions concern the Hoxseys' possible contributory negligence, an issue never reached by the jury and thus not pertinent to the verdict or to our review of that verdict. See Fondell v. Lucky Stores, Inc., 270 N.W.2d 205, 212 (Wis.1978) ("In a special verdict where the defendant is freed from causal negligence, any finding as to the plaintiff is superfluous."). Our consideration of the jury's decision that the defendants were not negligent in the maintenance of their dock requires us to look at the evidence concerning the possible negligent conduct of the defendants rather than of the plaintiffs. We have concluded that there was indeed a reasonable basis to find that the Bratsos' conduct was not negligent. The record reveals, as well, that the plaintiff had ample leeway to cross-examine the defendants' witnesses. We note that Mrs. Hoxsey does not claim error in the negligence or nuisance jury instructions or in the special verdict form. Nor, as counsel made clear at oral argument, does she claim that the jury disregarded or refused to follow the standard negligence instruction by considering contributory negligence factors when reaching its verdict of no negligence.
 
 
 18
 Because the jury verdict had a rational basis in the record, we affirm the judgment of the district court.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The suit was brought in federal court, based on diversity of citizenship, pursuant to 28 U.S.C. § 1332
 
 
 [2]
 On the accident investigation report he completed, Warden Wunrow stated his opinion as the accident investigator that the cause of the accident was the "inattentive operator" of the boat. Wunrow deposition, R. 47 at 38
 
 
 [3]
 The appellant asserts error to the trial court's admission of a medical report about her husband's visual acuity; the admission of testimony by Pierce and Wagner concerning the speed of Hoxseys' boat and its close proximity to shore; the limitation of her cross-examination of the defendants' boating expert Carlyle Whipple; and the admission of several allusions by defense counsel to life preservers after counsel had agreed to bar any reference to life preservers during the liability portion of the trial. According to the appellant, the court also erred in including an instruction on whether Mrs. Hoxsey was comparatively negligent by failing to keep a proper lookout, because there was no evidence that she had breached that duty