222 So.2d 411 (1969)
Upton DAVES
v.
Joe W. REED.
No. 45321.
Supreme Court of Mississippi.
April 21, 1969.
*412 Campbell, DeLong, Keady & Robertson, Greenville, for appellant.
Jacobs, Griffith & Hatcher, Cleveland, for appellee.
ETHRIDGE, Chief Justice.
This tort action originated in the Circuit Court for the Second Judicial District of Bolivar County. It involves questions of whether the doctrines of assumption of risk and intervening cause preclude any liability by defendant-appellant, Upton Daves, to plaintiff-appellee, Joe W. Reed. The jury returned a verdict in favor of Reed for $20,000. The Circuit Court reduced it to $19,500, because Daves' insurance carrier had already paid Reed $500 under a medical payments provision. Daves has taken a direct appeal from the judgment against him, and Reed cross-appeals from the $500 reduction of his verdict. We hold that issues of defendant's negligence and assumption of risk and intervening cause were for the jury; and that the court correctly reduced the amount of the verdict. The judgment is affirmed.
The accident which brought about this lawsuit occurred upon the premises of Cleveland Fisheries, a fish farm. It consists of several ponds of various sizes separated by levees which are wide enough for trucks and other vehicles. At the time of the accident, September 30, 1965, the premises were owned by J.T. Robinson, now deceased. From 1964 through 1966, Robinson and Daves operated Cleveland *413 Fisheries as a partnership. Daves had general overall supervision of day to day operations.
The main east-west levee and the northeast arm were completed in November 1964. Fish were first put into the ponds in December 1964. Thereafter these main levees and the others were traveled frequently by heavy trucks and equipment. Daves anticipated this and attempted to have the levees constructed to support this load.
Reed is engaged in the business of hauling dirt and gravel. A few days before the accident he contracted with Robinson, acting on behalf of the partnership, to deliver gravel to the levees and dump it at points to be designated by Daves. The weather was bad during most of the week. There had been considerable rainfall during the days immediately before the accident. On the previous day Reed and Daves inspected the levees to see if they were dry enough to haul gravel on them. The next morning, Reed, along with his employees, arrived with three bob trucks and one large trailer truck. This trailer truck had a single-axle trailer hooked behind it. The loaded weight of the vehicle was from 42,000 to 46,000 pounds. It was driven by Lindsey, Reed's employee.
The first time the trailer truck was driven upon the levees to deliver gravel, it traveled about sixty feet on the main levee and got stuck in the mud. Daves and Griffin, one of his employees, pulled it off the levee with a tractor. Reed, who saw this, concluded that the levees were still too wet and soft for the large trailer truck, so he instructed Lindsey not to take the big truck back upon the levee any more during that day. He thought that "the levee was wet and soft and it wouldn't hold the weight of that truck." However, the bob trucks, which were considerably lighter, were used during the remainder of the day. Daves knew of the instructions given by Reed to Lindsey and the reasons for them. Immediately thereafter, Reed left the premises to attend to other business.
Later that afternoon Daves concluded that the levees had dried enough to safely hold the big trailer truck and to begin hauling gravel to the levees. He instructed Lindsey, Reed's employee, to bring the large truck back upon the levee. Lindsey demurred but followed Daves' orders. It was Daves' job to tell Lindsey where to dump the loads of gravel. As Lindsey brought the trailer truck back on the levee, it promptly got stuck again.
Reed returned to the Cleveland Fisheries and found the trailer truck mired down on the main east-west levee. Daves, Lindsey and Griffin were present. A tractor was then hooked up to the truck, and it was pulled eastward toward the "Y," where the east-west levee was intersected by the northeast arm of another levee. Reed and Daves looked for a place to dump the loaded truck. When they reached the "Y" the truck was pulled in a northeasterly direction for a few feet, whereupon Reed decided to dump the truck at that point.
In order to dump gravel from the trailer bed, it is necessary to use a hydraulic hoist to lift the front of the bed some twelve feet into the air. When this is done, maximum stress is delivered to the rear wheels, and unless the surface is firm and level, there is danger of the truck turning over. The ground was level at the point where Reed attempted to dump the truck. He testified that he knew it would be dangerous but thought that it would be less dangerous to unload the trailer than it would be to turn it around with a heavy load. He decided not to continue pulling the truck forward with the tractor because "the other levees were narrower, and not as hard on top as this east-west levee. I would have just gone into further trouble if I'd have kept going."
Accordingly, Reed got in the truck and raised the bed of the trailer in an effort to dump the gravel. The truck began to turn over. In an effort to escape, Reed jumped from the cab, but part of the truck fell across the back of his legs at the knee level. *414 Subsequently, he underwent an operation on his knees, and he later brought this suit for medical expenses, loss of earnings, pain and suffering, and property damage.
The jury was justified in finding that Daves was negligent in directing Lindsey, contrary to his employer's instructions, to drive the trailer truck back on the levee, at a time when it was wet and unsafe for use by that heavy vehicle; and that Daves knew or should have known that the levee was unsafe at the time he directed Lindsey to take the trailer truck on the levee. His actions caused the vehicle to be placed in an unsafe and dangerous position.
For his own purposes, Daves directed the trailer truck to be brought on the levee for the purpose of hauling and unloading the gravel.
Whether the doctrines of assumption of risk and intervening cause should bar Reed's claim against Daves were, in the light of all the circumstances, issues for the jury.
Appellant asserts that appellee is precluded from recovery by the doctrine of assumption of risk; that he knowingly and intentionally exposed himself to the dangers incident to dumping the loaded trailer truck. However, the risk was created by the negligence of the appellant. The jury could find that Reed had no experience in using heavy trailer trucks in elevated work on levees, and that he should not be charged with full knowledge and appreciation of the particular risk at the time. Although Reed knew he was in a dangerous situation, whether he fully appreciated the danger and voluntarily assumed the consequences of his own actions is debatable. Prosser, Law of Torts 461-462 (3d ed. 1964), summarizes the limitations on the doctrine:
The defense of assumption of risk is in fact quite narrowly confined and restricted by two requirements: first, that the plaintiff must know and understand the risk he is incurring, and second, that his choice to incur it must be entirely free and voluntary. Since in the ordinary case there is no conclusive evidence against the plaintiff on these issues, they normally go to the jury; * * *
Reed's choice was not entirely free and voluntary. He had been placed in that position by Daves' negligence. The ground was level. The location for dumping appeared to him to be the best under the circumstances.
The significant difference between assumption of risk and contributory negligence is between risks which were in fact known to the plaintiff, and risks which he merely might have discovered by the exercise of ordinary care. Assumption of risk "is governed by the subjective standard of the plaintiff himself, whereas contributory negligence is measured by the objective standard of the reasonable man." Moreover, "assumption of risk is a jury question in all but the clearest cases." Prosser, Id., at 454; cf. Dendy v. City of Pascagoula, 193 So.2d 559 (Miss. 1967); Crouch v. Miss. Power & Light Co., 193 So.2d 144 (Miss. 1967); Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 146 So.2d 558, 92 A.L.R. 2d 1065 (1962); Wallace v. J.C. Penney Co., 236 Miss. 367, 109 So.2d 876 (1959).
The alternative of leaving the truck upon the levee until it became dry did not occur to Reed, and although this omission may have been contributory negligence, it is not assumption of risk. Daves had told him that the levee should be clear before the next day, so that expected trucks loaded with fish could come in. Other possible alternatives, shovelling the gravel from the truck or proceeding further and turning around, had disadvantages. Whether they should have been chosen would be contributory negligence, if anything, rather than assumption of risk. This jurisdiction has a comparative statute. Miss. Code 1942 Ann. § 1454 (1956).
Another limitation on assumption of risk, also applicable here, arises where plaintiff acts in the exercise of a right *415 given to him by law. One is not required to surrender a valuable use of his property merely because of another's wrongful conduct, and does not assume the sole risk of acting by availing himself of his own property. Schiro v. Oriental Realty Co., 272 Wis. 537, 76 N.W.2d 355, 73 A.L.R.2d 1368 (1956); Restatement Torts (Second) § 496E (1965); 65A C.J.S. Negligence § 174(2) (1966).
Daves also argues that his negligence merely created a condition which was superseded by the negligence of Reed in undertaking to dump the truck. A consideration of intervening cause involves the question of the extent of defendant's original obligation, since no duty of a defendant arises until causation is established. There is causation in fact here between Daves' negligence and plaintiff's injuries. His negligence, along with other causes, resulted in Reed's injuries. The real question is whether the intervention of the later cause (Reed's act) was a significant part of the risk involved in Daves' conduct, or was so reasonably connected with it that his responsibility should not be terminated. Prosser, Law of Torts 310 (3d ed. 1964). We think it was in both of these categories.
Daves directed the trailer truck upon the levee for the purpose of unloading the gravel for use on his levee. His purpose was to unload gravel, not to park the trailer. He could reasonably foresee that the trailer truck would be unloaded on the levee, because that was the very purpose for which he caused it to be placed there. Moreover, the jury could conclude that Daves should have reasonably foreseen that Reed would act to protect his property if it became stuck upon the levee, including that the truck would be unloaded there, because that was the purpose of it being driven to that point at Daves' direction. Daves' original negligence created a condition of danger which, the jury could find, was not superseded.
Discussing "normal intervening causes," Prosser says that there are intervening causes which could scarcely have been contemplated by a reasonable man in the place of the defendant at the time of his conduct, "but which are nevertheless to be regarded as normal incidents of the risk he has created." In these cases, normal intervening causes have been held not to supersede the defendant's liability. Restatement Torts (Second) §§ 443, 447 (1965). Prosser defines them in this way:
They are closely and reasonably associated with the immediate consequences of the defendant's act, and form a normal part of its aftermath; and to that extent they are not foreign to the scope of the risk created by the original negligence. For the most part they have been called foreseeable by the courts; but that word obviously has traveled a long way from its original meaning in connection with the risk created by negligence. Prosser, Law of Torts 315 (3d ed. 1964).
In the instant case, Daves directed the truck to be brought on the levee for the purpose of unloading gravel. This was a negligent act. Reed's effort to dump the gravel on the levee, the purpose for which the truck was placed there, and the sinking of a wheel and the turn over, could be considered by the jury as a normal consequence of Daves' own negligence. They were not foreign to the scope of the risk created by him and in that sense were foreseeable. It is enough that the act is a normal consequence of the situation created by the actor's negligence.
Reed's conduct may amount to contributory negligence, but Daves' negligent conduct was nonetheless the legal cause of the harm. In short, Reed's acts constituted the intervention of a force which can be considered a normal consequence of the situation created by Daves' negligent conduct, and not a superseding cause. Restatement Torts (Second) §§ 443, 447 (1965); cf. Oliver Bus Lines v. Skaggs, 174 Miss. 201, 164 So. 9 (1935) (citing with approval Restatement Torts § 447); Public Service Corp. v. Watts, 168 Miss. 235, 150 So. 192 (1933).
*416 Finally, Prosser draws this correct conclusion from an examination of many cases involving intervening cause:
In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury * * * Prosser, Law of Torts 330 (3d ed. 1964).
By cross-appeal Reed asserts that the trial court erred in ordering a $500 reduction of the verdict. Daves purchased and paid the premium for a comprehensive liability insurance policy, which contained two parts: general comprehensive liability coverage, and payment up to $500 of medical expenses of persons involved in accidents, without regard to whether insured was legally liable for such expenses. After the jury returned its verdict of $20,000 for plaintiff and judgment was entered, defendant moved to reduce it by $500, because of the $500 medical payment previously made to plaintiff. The parties agreed that the verdict and judgment did not take that into account.
Amounts which an insurance company disburses to an injured claimant under the medical payments provision of its liability policy covering its insured may be credited against the amount of damages which claimant is entitled to recover from the insured. This is in accord with the majority and most reasonable rule. Annot., 11 A.L.R.3d 1115 (1967). The collateral source doctrine is not applicable. 22 Am.Jur.2d Damages §§ 206, 210 (1965). It is predicated upon the theory that a tort-feasor has no interest in and therefore no right to receive benefit from monies received by the injured person from sources unconnected with defendant. Here, however, the tort-feasor obtains the advantage of payments made by himself and from a fund created by him.
The payments come not from a collateral source but from defendant. Medical payments coverage is paid for by the tort-feasor under a separate premium schedule. Since the entire right is purchased by him, he gets no "windfall" when he is allowed to credit medical payments against the medical portions of the general award. A person who has been prudent enough to pay for insurance to protect a particular class of persons from a certain hazard should be able to use the proceeds of that coverage to reduce the damages he is required to pay. Moreover, the injured person should not be allowed a double recovery for his medical expenses already recovered in this way. Cf. Bogdahn v. Pascagoula Street Rwy. & Power Co., 118 Miss. 668, 79 So. 844 (1918) (jury can consider prior settlement with joint tort-feasor in fixing damages against other).
The circuit court was correct, in accord with the agreement of the parties on the motion, in reducing the verdict by the sum paid under defendant's medical payment insurance coverage. We do not consider here whether this issue must be submitted to the jury, in the absence of an agreement by the parties. In all other respects, the evidence supports the amount of the verdict.
Affirmed.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.