Willie George McGOWAN, Plaintiff,

v.

ST. REGIS PAPER CO., INC.,
Defendant.

Civ. A. No. J75–114(N).

United States District Court,
S. D. Mississippi,
Jackson Division.

March 11, 1976.

Fred A. Ross, Jr., Jackson, Miss., for plaintiff.

Thomas H. Suttle, Jr., Jackson, Miss., for defendant.

## MEMORANDUM OPINION

NIXON, District Judge.

This diversity action was brought by the plaintiff, Willie George McGowan, a resident citizen of the state of Mississippi, against St. Regis Paper Company, Inc., a nonresident corporate defendant qualified to do business in the state of Mississippi, seeking compensation for injuries and damages suffered by him on July 26, 1972 while unloading wood chips for his employer, Columbia Pulp and Paper Company (Columbia), at the defendant's plant or mill in Monticello, Lawrence County, Mississippi.

This case was tried to the Court without a jury, and based upon all of the evidence of record this Court now makes its Findings of Fact and reaches its Conclusions of Law as required by Rule 52, F.R.Civ.P.

The facts of this case are for the most part undisputed. On the day of his injury complained of and for a time prior thereto, the plaintiff drove a tractor and trailer hauling wood chips which were sold by Columbia to various customers. On July 26, 1972, he made his first delivery ever to the plant of the defendant in Monticello with a

load of chips which was sold by Columbia to St. Regis.

After arriving at St. Regis' plant at about 8:30 a. m. and being checked in by one of the defendant's employees, McGowan followed the usual procedure of delivering and dumping the chips which is as follows. He drove the entire tractor and trailer up onto a ramp which is designed to and does lift to approximately an 80 or 90 degree angle dumping the wood chips from the trailer into a pit. Prior to the lifting of the ramp, plaintiff followed the usual prescribed procedure with which he was familiar, that is, he proceeded to "tie the truck down" with an approximately eight foot long, two inch chain which was secured to the ramp on one end and to the bumper of the truck on the other to prevent the truck from overturning or falling when it was lifted.

After descending from his tractor trailer, picking up the open end of the chain and walking backwards to his truck on the ramp in order to tie it down, the plaintiff slipped and fell on an oily or greasy substance located on the ramp in front of his truck, causing him to fall backwards and resulting in his back striking the tractor's bumper.

The ramp in question, constructed of sheet steel, is approximately 55–60 feet long and 9 feet wide, and is lifted by means of a hydraulic lift operated by an employee of St. Regis from a nearby small shed or house.

The plaintiff admitted on cross examination that he saw the oil and grease on which he slipped when he first descended from his truck, noticing a large amount thereof all "muddled up", acknowledging that he recognized it as a dangerous condition and stating that he "tried to walk through it as carefully as possible" inasmuch as it was necessary that he do so in order to "tie down" his truck.

Plaintiff slipped and fell between 8:30 and 9:00 a. m. after approximately ten trucks had already unloaded on the ramp and when the last preceding one had just pulled off after being unloaded.

It is undisputed that there were no signs posted to warn truck drivers of the presence of oil or grease on the ramp; however, despite the fact that this was his first time to unload on the defendant's ramp, McGowan had done so on many occasions at similar unloading ramps of other paper companies, and not only should have known of, but actually saw the oil and grease in question and appreciated that it constituted a dangerous condition prior to the time that he slipped and fell.

Although the defendant did not have an employee whose responsibility it was to keep the ramp clean at all times, it nevertheless frequently cleaned it and put sawdust thereon in order to absorb oil and grease which drained or leaked from some of the many trucks which unloaded thereon.

■ The owner or occupier of business premises owes invitees, such as plaintiff, the duty to exercise reasonable or ordinary care to keep its premises in a reasonably safe condition and to warn them of any dangers which are known or should be known to the owner through the exercise of reasonable care. *Corban v. Skelly Oil Company*, 256 F.2d 775, 780 (5th Cir. 1958); *General Tire & Rubber Company v. Darnell*, 221 So.2d 104, 107 (Miss.1969).

■ However, in the interest of his own safety, an invitee is required to use that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstances, *Stanley v. Morgan and Lindsey, Inc.*, 203 So.2d 473 (Miss.1967), and in the usual case, there is no obligation to protect him against dangers which are known to him or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself, and for this reason it is frequently held that reasonable care requires nothing more than a warning of danger. *General Tire & Rubber Company v. Darnell*, *supra* at 107; Prosser, Law of Torts, 403, 404 (3rd ed. 1964). Likewise, a warning of danger by the owner to the invitee is only required when the perilous condition is

known to the owner and not known to the invitee who is injured; and thus, where the danger is obvious or known to the invitee who is injured, no recovery is permitted. *Wilbourn v. Charleston Cooperage Co.*, 127 Miss. 290, 90 So. 9, 11 (1921). This is particularly true where a risk involved is one which is known or should be known to the invitee to be reasonably anticipated in connection with the work or activity being performed by him or others in the area in which he is injured. *See Wilbourn v. Charleston Cooperage Co., supra.*

■ Injury of itself confers no legal right; danger itself does not constitute negligence; and negligence of itself is not liability.

■ As an exception to the general rule requiring the owner or occupier of premises to furnish a safe place to work to an independent contractor and his employees, the owner or occupier is not liable for death or injury of an independent contractor or his employees resulting from dangers as to which he and his employees "assume the risk." *Jackson Ready-Mix Concrete v. Sexton*, 235 So.2d 267, 271 (Miss.), *cert. den.*, 400 U.S. 916, 91 S.Ct. 174, 27 L.Ed.2d 155 (1970).

In the case sub judice, although the defendant did not post any warning signs or give any other type of warning to plaintiff or other truck drivers unloading the wood chips on the defendant's ramp, they nevertheless knew, or in the exercise of reasonable care, should have known of the probable existence of oil or grease being present on the ramp which lifted many trucks while unloading chips therefrom; in fact, the plaintiff testified that he actually saw the oil or grease which subsequently caused him to slip and fall and realized that it constituted a dangerous condition. Therefore, the defendant was under no duty to warn him of that obvious and known danger.

■ There is no proof that the defendant's employees caused the oil or grease to be present on the ramp, that they had knowledge thereof, or that it had existed for such a period of time that they were charged with such knowledge; as a matter of fact, ten trucks had unloaded on this ramp on the morning in question prior to the time that the plaintiff was injured, and one had just left the ramp after unloading. All of these drivers followed the same procedure, presumably walking in the same area in which McGowan was walking at the time that he was injured, and it was not shown that any of the other drivers slipped or was injured, making it probable that the substance on which the plaintiff slipped either came from the truck immediately preceding him or from his own truck. Thus, the plaintiff has failed to prove by a preponderance of the evidence that the defendant was guilty of any negligence which proximately contributed to cause the plaintiff's injuries. *Sears, Roebuck & Co. v. Tisdale*, 185 So.2d 916 (Miss.1966); *accord, Mississippi Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 156 So.2d 734 (1963); *Williamson v. F. W. Woolworth Co.*, 237 Miss. 141, 112 So.2d 529 (Miss.1959).

■ In the event we are in error in our above finding of absence of negligence by the defendant, the plaintiff is nevertheless precluded from recovering damages from the defendant by the doctrine of assumption of the risk. The Mississippi Supreme Court has held that where assumption of the risk overlaps and coincides with contributory negligence, the contributory negligence or comparative negligence rule of Mississippi is applicable. However, the Court refused to abolish the doctrine of assumption of the risk as a bar to recovery and recognized that the application of the rule of comparative negligence, which is not a complete defense, where it overlaps and coincides with contributory negligence, "does not prevent a defense on the ground that plaintiff's injury was caused by his negligence, if his negligence was the *sole* proximate cause of the injury." (emphasis in original). *Braswell v. Economy Supply Co.*, 281 So.2d 669, 677 (Miss.1973). The defense of assumption of the risk is in fact quite narrowly confined and restricted by two requirements: first, that the plaintiff must know and understand the risk he is incurring, and second, that his choice to

incur it must be entirely free and voluntary. As the Mississippi Supreme Court pointed out in the case of *Daves v. Reed,* 222 So.2d 411, 414 (Miss.1969), the significant difference between assumption of the risk and contributory negligence is between risks which were in fact known to the plaintiff and risks which he merely might have discovered by the exercise of ordinary care. The former defense is governed by the subjective standard of the plaintiff himself, whereas the latter is measured by the objective standard of the reasonable man. Assumption of the risk is a jury question in all but the clearest cases.

The undisputed facts of the instant case constitute one of the rare instances where the doctrine of assumption of the risk as a complete bar to recovery is applicable, inasmuch as the plaintiff subjectively knew, as admitted in his sworn testimony, that the oily or greasy substance was present on the unloading ramp, that it constituted a dangerous condition, and that he voluntarily and freely was walking through the substance with a chain in his hand in an attempt to "tie down" his truck prior to tilting the ramp and unloading wood chips from the truck. He did not notify the employee of the defendant who was on duty in the control house a short distance away of this condition or ask that anything be done in connection therewith, but freely and voluntarily subjected himself to the danger which he recognized. Thus, he is barred from recovery by the doctrine of assumption of risk as it has been enunciated by the Mississippi Supreme Court.

Based upon the foregoing Findings of Fact and Conclusions of Law, this suit will be dismissed at the cost of the plaintiff. A judgment conforming with the foregoing findings and conclusions shall be presented to this Court within the time prescribed, approved as to form by counsel for both sides.