# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-02027-SCT

*PEARL PUBLIC SCHOOL DISTRICT*

*v.*

*RITA GRONER*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/17/1999 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ARTHUR F. JERNIGAN, JR. |
| | RONALD HENRY PIERCE |
| ATTORNEY FOR APPELLEE: | MICHAEL P. YOUNGER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 04/19/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/10/2001 |

**BEFORE BANKS, P.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case had its genesis in February of 1996 when a fight occurred at a Pearl Public School ("the District") basketball game and Rita Groner ("Groner") was injured. In July of 1996, Groner filed a complaint against the District. Following a non-jury trial, the trial court entered its findings of fact and conclusions of law in favor of Groner and against the District in the amount of $45,000. Judgment was entered accordingly. The District filed its Notice of Appeal on December 7, 1999.

**I.**

¶2. Rita Groner is a long time supporter of Pearl High School. She and her husband frequently attended athletic events at the school. On February 6, 1996, Groner and her husband attended a basketball game between Pearl and Brandon that was being held in the Pearl High School gymnasium.

¶3. At the beginning of each school year, the Mississippi High School Activities Association requires each school to submit a security plan. The plan requires that two security officers be present at each sporting event. A copy of this security plan was not made part of the record. On the night of February 6, 1996, only one officer arrived for duty. Officer Jeffrey Williams, the attending officer, informed his reserve commander that he was the only officer at the school. Officer Williams made a judgment call that a second officer was not necessary. He testified that "everything looked pretty normal at that time." According to Dr. William Dodson, superintendent of the schools, it was the responsibility of the reserve officer to insure that the security plan was implemented.

¶4. Officer Williams was standing inside the gymnasium next to the basketball court when a fight broke out. According to Groner, the fight happened "in a blink of an eye." There was no evidence leading up to the

fight that would have given any indication of trouble. Officer Williams testified that, even if a second officer had been present, the incident could not have been prevented.

¶5. During the fight, Groner was thrown from the stands onto the gymnasium floor. She sustained injuries to her fingers, hand, and wrist. Due to her injury, Groner has been through extensive physical therapy. She has two fingers that "don't work." Also, there is no rotation in her wrist. Groner testified that, according to her doctor, two future surgeries are necessary.

¶6. The trial court awarded a judgment in favor of Groner and against Pearl Public School District in the amount of $45,000. Pearl Public School District filed its Notice of Appeal on December 7, 1999. Finding that the trial court made no determination on ordinary care, we reverse and remand.

## II.

¶7. The question of law before this Court is whether Pearl Public School District is immune from liability under the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § § 11-46-1 to 23 (Supp. 2000). This Court's review of questions of law is de novo, and we will reverse for erroneous interpretation or applications of the law. *Bank of Miss. v. Hollingsworth*, 609 So.2d 422, 424 (Miss. 1992)(citing *Harrison County v. City of Gulfport*, 557 So.2d 780, 784 (Miss. 1990)).

## III.

¶8. The first issue presented to this Court is whether the trial court erred in denying Pearl Public School District's Motion for a Directed Verdict pursuant to Miss. Code Ann. § 11-46-9? The Mississippi Tort Claims Act provides the exclusive civil remedy against governmental entities and employees for acts and omissions that give rise to suit. Miss. Code Ann. § 11-46-7(1). The District argues that pursuant to Miss. Code Ann. § 11-46-9(1)(d), (1)(g), and (1)(u) it is statutorily exempt from Groner's claims. Section 11-46-9 states that "a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim based upon an act or omission enumerated therein." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234, 1237 (Miss. 1999).

Miss. Code Ann. § 11-46-9(1)(d)

¶9. Miss. Code Ann. § 11-46-9(1)(d) provides that a governmental entity and its employees will be exempt from liability:

. . . .

(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Miss. Code Ann. § 11-46-9(1)(d).

¶10. The United States Supreme Court has stated that if there is room for policy judgments and decision making, there is discretion. *Dalehite v. United States*, 346 U.S. 15, 73 S. Ct. 956, 97 L. Ed. 1427(1953). Similarly, this Court has held that "[a] duty is discretionary if it requires [an] official to use her own judgment and discretion in the performance thereof." *L.W. v. McComb Separate Mun. Sch. Dist.*,

754 So.2d 1136, 1141 (Miss. 1999) (citing *T. M. v. Noblitt*, 650 So.2d 1340, 1346 (Miss. 1995). Discretionary conduct alone is not an absolute bar to liability. *Id.* at 1141. When conduct is found to be discretionary, a determination of ordinary care must then be made before the statutory bar is raised.

¶11. In contrast, an act is ministerial if it is positively imposed by law and if the performance of the conditions imposed are not dependent on an officer's judgment or discretion. *L.W.*, 754 So.2d at 1141 (citing *Davis v. Little*, 362 So.2d 642, 644 (Miss. 1978)).

¶12. A factually similar case was presented to a Michigan court in 1989. In *Giddings v. City of Detroit*, 444 N.W.2d 242 (Mich. Ct. App. 1989), the plaintiff, a volunteer teacher, was attacked and raped at a high school. She filed suit against the City, the Board of Education, the superintendent, the principal, the head of security and the security guards. The claim against the security guards was that they failed to follow or implement security procedures. There was no proof that the security guards acted in a supervisory or a decision-making role. The court held that the activities of school security guards were ministerial and did not entail discretionary decision making. "Although the task of patrolling the school may involve some decision-making, the essence of their tasks appears to have been the execution of decisions and to have involved only minor decision-making." They were therefore not entitled to governmental immunity from liability.

¶13. In a case recently before this Court, a school district was subjected to a negligence action when an altercation occurred on school property. *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234 (Miss. 1999). A student was injured while "scrambling" off a wall in order to avoid a fight between other students. *Id.* at 1235. In that case, the trial court held that "[s]ince there is no statutory requirement that a school district provide security on school premises, the court finds as a matter of law that any duty to do so requires the exercise and judgment of the school district." *Id.* at 1236. For that reason, the trial court held that the duty was discretionary. *Id.* When the case reached this Court, we held that school administrators and teachers are required, by statute, to hold students in strict account for disorderly conduct at school. *Id.* at 1241. For this reason, the school district's duty was ministerial and not discretionary.

¶14. More recently this issue was discussed in *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136 (Miss. 1999). In *L.W.*, this Court held that public schools have a responsibility to provide a safe environment for students; therefore, ordinary care and reasonable steps must be taken to minimize risk to students. *Id.* at 1143-45. In other words, ordinary care must have been used before a school can use the statutory shield for immunity. *Id.* The issue of ordinary care is a fact question that should be decided in the trial court. *Id.* at 1142. This Court reversed and remanded *L.W.* to the trial court for a determination of whether ordinary care was used. *Id.* at 1143.

¶15. The Mississippi High School Activities Association regulates and provides guidelines for the schools to follow. It required, as part of its regulations, that Pearl High School provide a security plan for each athletic event. This was not a requirement that was imposed by statute; however, it was a regulation set up by the Mississippi High School Activities Association. The governing statute, Miss. Code Ann. § 37-9-69 (1996), refers to "statutes, rules and regulations." We do not find that the duty turns upon the issue of whether the function was discretionary or ministerial. Instead, *L.W.* stands for the proposition that the school district has a duty of ordinary care with respect to providing a safe environment for its patrons.

¶16. Miss. Code Ann. § 37-9-69 provides:

It shall be the duty of each superintendent, principal and teacher in the public schools of this state to

enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.

Miss. Code Ann. § 37-9-69. Also, under Miss. Code Ann. § 37-13-91 our state requires that all children be enrolled in school. For this reason, this Court held in *L.W.* that it would only seem "logical" that ordinary care be required in administering our schools. *L.W.*, 754 So.2d at 1142.

¶17. "[B]oth state and federal law support our conclusion that public schools have the responsibility to use ordinary care and take reasonable steps to minimize risks to students thereby providing a safe school environment."*Id.* at 1141. As earlier stated, the issue of ordinary care is a question of fact. "The trial court, confronted with all the relevant facts, should then under our law, decide whether or not those responsible used ordinary care as required by the statute." *Id.* at 1142.

¶18. The trial court judge made no reference to ordinary care in his findings of fact and conclusions of law. For this reason, this case must be remanded to the trial court for a factual determination on ordinary care.

### IV.

¶19. The second issue raised by the District is whether the trial court erred in failing to establish fault between all potentially responsible persons, especially the individuals who actually caused the civil disturbance? Miss. Code Ann. § 37-9-69 states that schools shall hold students to strict account for disorderly conduct at school. The statute requires that school personnel maintain control and discipline over students while they are at school. *L.W.*, 754 So.2d at 1142.

¶20. The District alleges that the amount of damages should have been apportioned among all potentially responsible parties. We agree. On the other hand, apportionment is an affirmative defense that must be pled and proven. This Court has held that "[i]t is fundamental that the burden of proof of affirmative defenses rests squarely on the shoulders of the one who expects to avoid liability by that defense." *Marshall Durbin Cos. v. Warren*, 633 So.2d 1006, 1009 (Miss. 1994). The trial court erred in failing to apply apportionment among all responsible parties. On remand the trial court should determine the issue of apportionment based upon the proof already in the record to the extent that any of these other tort feasors is deemed to have been negligent thereby contributing to Groner's injury and damages.

### V.

¶21. Lastly, the District argues that the trial court erred by failing to grant the District credit for amounts paid to Groner under the medical pay provisions of its insurance policy. Amounts that are disbursed by a defendant's insurance company to an injured claimant may be credited against the amount of damages which the claimant is entitled to recover. *Daves v. Reed*, 222 So.2d 411, 416 (Miss. 1969). This Court has reasoned that payments from the defendant's insurance company are not coming from a collateral source, but from the defendant. *Id.* "A person who has been prudent enough to pay insurance to protect a particular class of persons from a certain hazard should be able to use the proceeds of that coverage to reduce the damages he is required to pay." *Id.* This is consistent with the theory that injured parties should not be allowed double recovery. *Id.*

¶22. In the case sub judice, the evidence supports the conclusion that the circuit court judge did take the medical pay provisions into account in his judgment. The maximum cap on damages was $50,000. The verdict in favor of Groner was $45,000. The District's insurance company paid Groner $4,880 under its medical pay provision. It appears to this Court that the total amount of damages was, in fact, reduced by the amount that had already been paid. Therefore, the judgment was for $45,000 instead of $50,000. The District actually received a benefit in the amount of $120.00 because the circuit court judge could have returned a verdict for $45,120.00. For this reason, the claim of the District alleging that the insurance money was not credited to the verdict is without merit.

## CONCLUSION

¶23. The Mississippi High School Activities Association did provide regulations for a security plan and the officer exceeded his authority when he decided only one security guard was needed. For this reason, this case is reversed and remanded to the circuit court for a determination on ordinary care and for further findings consistent with this opinion.

¶24. **REVERSED AND REMANDED.**

**PITTMAN, C.J., BANKS, P.J., MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶25. The Pearl Public School District was under an affirmative duty to provide two armed security guards for each basketball game, and the district may not delegate its responsibility to a third party. The security guard present on the night in question lacked the authority to deviate from the security plan, and his duty was therefore ministerial in nature. The circuit court's finding that his actions fell below that of a reasonable person was based on substantial evidence, and I would therefore affirm the trial court's judgment. Accordingly, I dissent.

¶26. The majority remands this case to the circuit court "for a factual determination on ordinary care." However, the chancellor specifically found that ordinary care under the facts at bar would require more than one security guard, stating that "there have been past instances of fights and/or altercations during Brandon-Pearl sporting events and this rivalry alone would have been cause to have more security rather than less security."

¶27. The court went on to find that this fight originated from an altercation earlier in the day, and that Rita Groner's injuries "would have been preventable had the school followed its own security plan and had the school's agent patrolled the stands as common sense would dictate that he should have." Though not employing the particular words "ordinary care," the circuit court found that the security guard's actions fell below that of a reasonably prudent person. The test for liability in negligence actions has been defined in Mississippi as "what a reasonably prudent person would ordinarily have done in such a situation." *Jefferson v. Denkmann Lumber Co.*, 167 Miss. 246, 148 So. 237, 239 (1933).

¶28. While the record does not include the full text of the security plan, the record shows that the Mississippi High School Activities Association regulates all high school sporting events, and requires school districts to submit annual security plans prior to each school year. It is undisputed that in 1996 the plan for the Pearl school district mandated that at least two armed security guards must not only be present at

basketball games, but must also be visible and patrolling the stands at all times. Common sense and good police procedures tell one that if the officers are visible, violence is far less likely to occur.

¶29. In the case at bar, Jeffrey Williams made the decision to not bring in a second guard, as was required by the security plan. This decision was not authorized by his position in the school system. As a security guard, Williams lacked discretion to decide whether to follow the security plan. His job required that he carry out the plan as it was written. The decision to deviate from it was not within his discretion. Miss. Code Ann. § 37-9-69 (1996) requires the superintendent, principal, and teachers "to observe and enforce the statutes, rules and regulations prescribed for the operation of schools." The school district was negligent in allowing only one security guard and should be accountable, which is what the trial court found in this case.

¶30. In addition, the school charges a fee for the public to attend these events. In *Quinn v. Mississippi State Univ.*, 720 So.2d 843 (Miss. 1998), we held that the defense of governmental immunity was not available to the university in a suit based on breach of contract. The Quinns paid an admission fee to the university to enroll their son in a baseball camp. In that case we held as follows:

> By doing so, they entered into an implied contract with the university. This contract carried with it the implied promise that the university would provide a safe instructional environment for the campers attending the baseball camp. This Court holds that when Brandon was hit in the mouth with the bat, the university breached its contract with the Quinns.

*Id.* at 850.

¶31. Likewise, in *Churchill v. Pearl River Basin Dev. Dist.*, 619 So.2d 900, 903 (Miss. 1993), we held that the payment of an admission fee to a water park created an implied contract that the premises were safe for water sports. Though the defendant was a political subdivision, we held that the defense of governmental immunity does not apply to actions brought on a breach of contract theory. *Id.* We then allowed Churchill to seek recovery up to the limits of the liability insurance policy.

¶32. Rita Groner presumably paid for admission into the basketball game and was, therefore, entitled to presume that the school would provide a safe facility. This is an athletic activity in which the school charges admission fees and makes a profit. It should not be allowed immunity for this.

¶33. I also write to stress that the holding in *Daves v. Reed,* 222 So.2d 411, 416 (Miss. 1969), only applies to liability insurance policies that were purchased by the tortfeasor. In *Daves*, we held that when a defendant purchases liability insurance, medical benefits paid to the plaintiff may be credited against the verdict. *Daves* should not be interpreted to alter the collateral source doctrine, and it so stated.

¶34. Also, the *Daves* case was a negligence suit between private citizens, and was not brought under the Mississippi Tort Claims Act. As a result, instead of deducting insurance benefits from the verdict, the insurance payments should be added to the maximum verdict allowed under the MTCA. Since this case was brought under the MTCA and the school district has insurance, immunity is further waived up to the amount of insurance.

¶35. Miss. Code Ann. § 11-46-5(1) (Supp. 2000) waives immunity for negligent acts or omissions up to the maximum amount of liability provided for in section 11-46-15. Section 11-46-15(1)(a) limits the government's liability to $50,000 for negligent acts or omission occurring between July 1, 1993, and July 1,

1997.

¶36. Seemingly in contrast with these provisions, Miss. Code Ann. § 11-46-17(2) (Supp. 2000) states the following: "If liability coverage, either through insurance policies or self-insurance retention is in effect, immunity from suit shall be waived only to the limit of liability established by such insurance or self-insurance program." That section further states: "**However, this shall not limit any cause of action against such political subdivision relative to limits of liability under the Tort Claims Act**." Miss. Code Ann. § 11-46-17(3) (Supp. 2000) (emphasis added).

¶37. In other words, insurance waives immunity up to the policy limits, while at the same time not limiting the recovery available under section 11-46-15(1)(a). Therefore, Groner should be able to recover up to the amount provided for in section 11-46-15, in addition to amounts paid by the insurance policy pursuant to section 11-46-17. While the record does not contain the insurance policy purchased by the school board, it does show that the policy contained a "med pay" provision to pay up to $5,000 to injured victims without regard for fault. The trial court could therefore have awarded Groner up to $55,000.

¶38. I must also disagree with the majority's decision to order the trial court to "determine the issue of apportionment based upon the proof already in the record to the extent that these other tortfeasors are deemed to have been negligent." Apportionment is an affirmative defense that must be pled pursuant to M.R.C.P. 8(c), and the defendant bears the burden of proof. *Mississippi Tank Co. v. Dependents of Walker*, 187 So.2d 590, 592 (Miss.1966) (holding defense of apportionment to be waived due to the failure to plead it). The school district failed to plead this defense and did not even raise the issue until the close of the plaintiff's case, when it moved for directed verdict.

¶39. In addition, the record is completely devoid of any information regarding the identities of the individuals responsible for the fight that led to Groner's injuries. The closest the defense has come to identifying them is through the testimony of a basketball coach who testified that he was "given some names." The proof in the record is not even sufficient to identify these individuals, and is certainly inadequate to deem them negligent. The trial court therefore did not err in refusing to apportion fault, as the school district failed to plead the issue and failed to offer any proof regarding the apportionment liabilities or identities of these "phantom defendants." How is the complete and just compensation to be made if apportionment is applied to individuals who have not been identified, nor made parties to the suit?

¶40. The security plan devised by the school district and approved by the Mississippi High School Activities Association required two security guards to be present at basketball games and patrolling the stands. Security guards are charged with the duty of implementing the plan, but lack the authority to modify it. Therefore, the only discretionary function performed by security guard Jeffrey Williams on the night of February 6, 1996, was the negligent decision not to follow the security plan. The judgment of the circuit court was correct and should be affirmed. Accordingly, I dissent.

    **DIAZ, J., JOINS THIS OPINION.**