# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-IA-00997-SCT

*THE MOSS POINT SCHOOL DISTRICT, KIM STALEY, IN HER OFFICIAL CAPACITY AS SUPERINTENDENT OF MOSS POINT SCHOOLS, DAVID RUBENSTEIN, IN HIS OFFICIAL CAPACITY AS CHIEF FINANCIAL OFFICER OF MOSS POINT SCHOOLS AND PAMELA D. PERKINS, IN HER OFFICIAL CAPACITY AS PRESIDENT OF THE MOSS POINT SCHOOL BOARD*

*v.*

*ZACHARIAH "ZAI" STENNIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2011 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM E. WHITFIELD, III |
| | JOHNNY L. NELMS |
| ATTORNEY FOR APPELLEE: | DOUGLAS LAMONT TYNES, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/27/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Zachariah "Zai" Stennis sued Moss Point School District and several school-district officials[1] (MPSD) in the Circuit Court of Jackson County for injuries she sustained in an off-

---

[1]Stennis joined as defendants Kim Staley (superintendent of MPSD), David Rubenstein (chief financial officer of MPSD), and Pamela Perkins (president of Moss Point School Board).

campus assault by a fellow student and the student's mother. MPSD filed a motion for summary judgment and a motion to dismiss, which were denied by the circuit court. Upon denial of its motion for reconsideration, MPSD filed this interlocutory appeal.

## FACTS AND PROCEDURAL HISTORY

¶2. Stennis, then a senior at MPHS, and fellow MPHS student Shakara Davis were dating the same boy. According to Stennis's deposition, in July 2008, Davis drove by Stennis's house and began cursing from the window of her car. Davis did not get out of the car, leaving only when Stennis's cousin threatened to call the police. Stennis claimed "that's how the situation got started."

¶3. The new school year began in August without incident between Stennis and Davis. However, around September 15, 2008, Stennis received a text message from Davis's mother, Regayla Woods. Stennis alleged that the message from Woods stated "that when I get out of school, [she] be waiting [sic] for me outside."[2] That same day, Stennis presented the text message to "Officer Williams . . . [who] read it and said he was going to handle it."

¶4. The following day, another officer removed Stennis from class to inquire about "what was going on." Stennis and the officer met for approximately thirty minutes. Stennis informed the officer about Woods's text message and the July incident at Stennis's home. At the conclusion of that meeting, the officer had Stennis sign a paper acknowledging that she

---

[2]Stennis testified, "[i]t was two long messages. I can't remember everything it said."

and Davis "would not fight or else [they would] be expelled or suspended."[3] Stennis received no further communication from Davis or Woods after the text of September 15.

¶5. On October 2, 2008, Stennis and Davis attended a seventh-period pep rally at the school. According to Stennis, Davis and her friends were looking at Stennis and her friends and talking about them. In response, Stennis claims to have said to Davis, "I ain't worried[.]" At the conclusion of the pep rally, students were dismissed from school. Stennis and two friends walked to her car in the student parking lot without incident. Stennis exited the student parking lot onto a public street, traveled to a four-way stoplight, and turned right onto another public street that fronts MPHS. It was there that Woods pulled her car in front of Stennis's car and blocked its path. Stennis and Woods exited their vehicles. Stennis allegedly "asked [Woods] will she let me out." At that point, Davis appeared.[4] Woods then opened her trunk and handed her daughter a knife and a box cutter. A struggle ensued which resulted in Stennis being stabbed by Davis and struck in the head with a tire iron by Woods. Woods and Davis got in separate cars and fled. Stennis returned to her car and drove herself to the hospital, where she spent three or four days recovering from her injuries. Davis was expelled from school.

---

[3]According to Stennis, Davis was meeting with another officer in a separate room at the same time.

[4]Stennis testified, "[Davis] didn't get out of the car. I don't know where she came from."

¶6.    On September 29, 2009, Stennis filed suit under the Mississippi Tort Claims Act (MTCA) against MPSD in the Circuit Court of Jackson County, Mississippi. Her complaint alleged, *inter alia*, that MPSD "breached [its] duty to exercise the necessary supervision on [MPSD] premises to avoid assaults by other students or interlopers"; "breached [its] duty to provide a safe place for [Stennis] to attend school"; was "negligent per se due to [its] failure to protect [Stennis's] safety as she exited the school and walked to her vehicle"; "negligently failed to prevent an assault committed on her person"; and "failed to provide adequate security, failed to adequately train security personnel, and failed to properly supervise security personnel."

¶7.    On September 21, 2011, MPSD filed a "Motion for Summary Judgment, Motion to Dismiss, and Itemization of Facts." MPSD sought summary judgment on two grounds. First, MPSD claimed immunity under the MTCA. Second, MPSD argued that it owed Stennis no duty at the time of the incident, for "school was over" and the "assault actually occurred after she exited her vehicle and was standing on a public street[.]"

¶8.    On December 14, 2011, the circuit court entered an "Order Denying Defendant's Motion for Summary Judgment and Motion to Dismiss[.]" MPSD filed a "Motion for Reconsideration[,]" which also was denied. MPSD filed this interlocutory appeal.

## ISSUES

¶9.    On interlocutory appeal, MPSD challenges the circuit court's denial of its motion for summary judgment and motion for reconsideration. Pertinent to the denial of those motions, MPSD raises the following issues:

4

I.       Did the defendants have any duty of care to the plaintiff at the time of the subject incident?

II.     Even if the defendants had a duty of care to the plaintiff at the time of the subject incident, were their actions/inactions discretionary functions pursuant to Mississippi Code Section 11-46-9(1)(d) such that they have immunity as to the claims made against them in the plaintiff's complaint?

III.    Even if the defendants had a duty of care to the plaintiff at the time of the subject incident, did their actions/inactions relate to an alleged lack of "control" and "discipline" of students pursuant to Mississippi Code Section 11-46-9(1)(x) such that they have immunity as to the claims made against them in the plaintiff's complaint?

As issue I is dispositive, we will address only that issue.

## STANDARD OF REVIEW

¶10.    "We review the circuit court's grant or denial of summary judgment under a de novo standard." *Liberty Mut. Ins. Co. v. Shoemake*, 111 So. 3d 1207, 1209 (Miss. 2013) (citing *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1205 (Miss. 1998)). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). "The evidence must be viewed in the light most favorable to the party opposing the motion." *Eli Inv., LLC, v. Silver Slipper Casino Venture, LLC*, 118 So. 3d 151, 154 (Miss. 2013) (citing *Davis v. Hoss*, 869 So. 2d 397, 401 (Miss. 2004)).

## ANALYSIS

**Did the defendants have any duty of care to the plaintiff at the time of the subject incident?**

¶11.   In a claim of negligence, the plaintiff must first establish a duty owed to it by the defendant. *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So. 2d 413, 416 (Miss. 1988) (citing *Burnham v. Tabb*, 508 So. 2d 1072 (Miss. 1987)). The existence of a duty is a question of law. *Lyle v. Mladinich*, 584 So. 2d 397, 400 (Miss. 1991) (citing *Harris v. Pizza Hut of Louisiana, Inc*., 455 So. 2d 1364, 1371 (La. 1984)).

¶12.   This Court has stated that the "MTCA provides the exclusive remedy against a governmental entity or its employee for the act or omission which gave rise to the suit." *Covington County Sch. Dist. v. Magee*, 29 So. 3d 1, 4 (Miss. 2010) (citing Miss. Code Ann. § 11-46-7(1) (Rev. 2012)). MPSD "constitutes a 'governmental entity' and a 'political subdivision' pursuant to the MTCA." *See id*. The MTCA provides, in pertinent part,

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> (b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a *statute, ordinance or regulation*, whether or not the statute, ordinance or regulation be valid[.]

Miss. Code Ann. § 11-46-9 (Rev. 2012) (emphasis added). Section 11-46-9(1)(b) encompasses ministerial duties – those duties "which ha[ve] been positively designated[,]" by "statute, ordinance or regulation." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1240 (Miss. 1999) (quoting *Mosby v. Moore*, 716 So. 2d 551, 557 (Miss. 1998)); Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2012).

¶13.   Mississippi Code Section 37-9-69 provides, in pertinent part,

6

> [i]t shall be the duty of each superintendent, principal and teacher in the public schools . . . to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.

Miss. Code Ann. § 37-9-69 (Rev. 2013). This Court has recognized that Section 37-9-69 creates a ministerial duty wherein "public schools have the responsibility to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment." *Henderson v. Simpson County Pub. Sch. Dist.*, 847 So. 2d 856, 857 (Miss. 2003) (quoting *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1143 (Miss. 1999)), *overruled on other grounds*; *see also Lang*, 764 So. 2d 1234 (Miss. 1999); *Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911, 916 (Miss. 2001). It was this ministerial duty for which the circuit court (citing *L. W.*) found MPSD had a responsibility of ordinary care and denied summary judgment.

¶14.    However, the circuit court's reliance on this ministerial duty was misplaced. In cases where public schools have been held to have a ministerial duty to provide a safe school environment under Section 37-9-69, the student's (or nonstudents' in some cases) injuries occurred on school property. This Court has explicitly stated that Section 37-9-69 "requires that school personnel maintain control and discipline over students *while they are at school*." *Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911, 916 (Miss. 2001) (emphasis added) (citing

7

*L. W.*, 754 So. 2d at 1142). The case *sub judice* is clearly distinguishable, as the incident occurred off school property, after Stennis and Davis had been dismissed from school.[5]

¶15.    The Court of Appeals addressed the duties owed by a school to individuals on a public street in ***Gammel v. Tate County School District***, 995 So. 2d 853 (Miss. Ct. App. 2008). Gammel was taking his children to a carnival event at an elementary school. *Id*. at 855. He parked his car in a school bus parking lot across the street from the school. *Id*. While he was crossing the public street between the bus parking lot and the school, a passing vehicle struck and killed Gammel. *Id*. Gammel's estate sued the school district, among others, for wrongful death. *Id*. The trial court granted summary judgment to the school district. *Id*. On appeal, the Court of Appeals examined the case under the theory of premises liability, finding that Gammel held the status of trespasser when he parked in the school bus parking lot. Although it noted that the school had a "statutory duty of ordinary care to provide a safe environment for its patrons" under Section 37-9-69, the Court of Appeals did not extend that duty beyond school property. Thus, when Gammel "stepped off the bus parking lot" onto the public street,

_____

[5]Stennis argues that "MPSD had control of the area that included the road where [she] was attacked[,]" and "whether or not this happened on school property is a question of fact." In a related code section, the Legislature has defined  "school property" as "includ[ing] any public school building, bus, public school campus, grounds, recreational area or athletic field in the charge of the superintendent." Miss. Code Ann. § 37-11-29 (Rev. 2013). Stennis admitted in her deposition that the incident occurred on a public street. A public street does not fit the definition of "school property." Furthermore, even though the school used the public street for bus drop-off and pick-up, the public at large used the street as well. The authority to police the street rested with the Moss Point Police Department, not MPSD. No issue of material fact exists as to whether this incident occurred on school property.

8

"he lost his status[,]" and the school owed him no "duty whatsoever at the time of the accident."[6] *Id*. at 859.

¶16. Consistent with *Gammel*, Section 37-9-69 does not impose a duty of ordinary care on schools to provide a safe environment to students who have been dismissed from school and are injured off school property. The circuit court erred in denying summary judgment on that basis.

¶17. However, our analysis cannot end there, for Stennis contends that the MPHS Student Handbook created a "duty that MPSD owed to [her] . . . to notify law enforcement of the threats when they were made aware of the threats." MPSD responds that "the student handbook is not a 'statute, ordinance, or regulation'" contemplated by Section 11-46-9(1)(b); therefore, it "does not create a ministerial duty for which MPHS would be required to show 'ordinary care.'" This court has never addressed whether a student handbook could impose a ministerial duty upon a school.[7]

---

[6]Stennis argues that *Gammel* is not applicable, as Gammel was a trespasser – a status clearly distinguishable from that of a student attending school. Yet, Gammel's status when he was in the school bus parking lot is irrelevant to the Court of Appeals' holding. The critical aspect was that Gammel relinquished any status he possessed when he exited the school property – the result being the same had he been an invitee or licensee.

[7]In *Groner*, this Court explicitly held that a "regulation" created by the Mississippi High School Activities Association imposed a duty on Pearl High School. *Groner*, 784 So. 2d at 915; *see also* *Mississippi Dep't of Human Servs. v. S.W*, 111 So. 3d 630, 639 (Miss. Ct. App. 2012) (holding that the Department of Human Services' policy manual set forth ministerial duties to act to care for and protect children in its custody).

¶18. The Legislature has provided that "school boards . . . shall have the . . . power . . . [t]o prescribe and enforce rules and *regulations* . . . for the government of schools . . . ." Miss. Code Ann. § 37-7-301(l) (Rev. 2013) (emphasis added). If the school board exercises its authorized power and prescribes a regulation(s) positively imposing a duty on the school, then Section 11-46-9(1)(b) requires that the school exercise ordinary care in the execution or performance of that regulation. *See* Miss. Code Ann. § 11-46-9 (Rev. 2012). Moreover, Section 37-9-69 explicitly states, in pertinent part, "[i]t shall be the duty of each superintendent, principal and teacher in the public schools . . . to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Miss. Code. Ann. § 37-6-69 (Rev. 2013). As such, the Legislature has granted the school district the authority to create a rule or regulation, *e.g.*, through a student handbook, which imposes a positive duty on a school.

¶19. The excerpt presented by Stennis to be a provision of the student handbook provides:

> THREATS[:] Anyone who threatens violence is guilty of a serious criminal act and will be immediately reported to the proper authorities. Any threat made against a teacher, student, staff member or any other person should be reported immediately to the principal or designee. If on investigation the principal determines that a serious threat has been made, the offender will be reported to campus security, the city police and the juvenile authorities.

¶20. Although the applicable standard of review is de novo, this Court cannot adequately assess, based on the record excerpt before it, whether a purported provision of the handbook required the school officer to report the threat to police. The record contains only a three-page excerpt on which is handwritten "Student Handbook[.]" Furthermore, the trial court

10

made no reference to the student handbook in finding that MPSD owed a duty of ordinary care. While the provision may have imposed upon the school a positive duty to report the threat to police, this Court risks declaring that it does so when the handbook as a whole is not before this Court.

¶21. We are constrained to remand this case to the circuit court to develop the record and make a determination of whether the student handbook positively imposed a duty on the school to report Woods's text message.

## CONCLUSION

¶22. The circuit court erroneously found that MPSD's duty of ordinary care to provide a safe school environment applied in this case. However, the student handbook excerpt arguably imposed a duty on the school to report the threat. Based on the record before it, this Court cannot to make that determination. As such, we remand this case to the Circuit Court of Jackson County to consider whether the student handbook imposed such a duty.

¶23. **REVERSED AND REMANDED.**

**DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**

11